UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:21-cr-342-VMC-SPF

PLAMEN GEORGIEV VELINOV

_____/

**ORDER**

This matter comes before the Court pursuant to the United States of America's Motions in Limine (Doc. # 77), filed on December 22, 2022. Defendant Plamen Georgiev Velinov responded on January 3, 2023. (Doc. # 82). The United States replied on January 9, 2023. (Doc. # 88). The Motions are granted as set forth herein.

**I.  Legal Standard**

"The term 'motion in limine' generally refers to a motion 'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" United States v. Fernetus, 838 F. App'x 426, 432 (11th Cir. 2020) (quoting Luce v. United States, 469 U.S. 38, 40 n.2 (1984)). "It is the province of the trial judge to weigh any materiality against any prejudice." United States v. Shelley, 405 F.3d 1195, 1201 (11th Cir. 2005). The trial judge has wide discretion in doing

1

so, Cabello v. Fernandez-Larios, 402 F.3d 1148, 1161 (11th Cir. 2005), and unless the judge's reading is "off the scale," her discretion is not abused, Shelley, 405 F.3d at 1201.

"The starting place for evidentiary admissibility is relevance." United States v. McGregor, 960 F.3d 1319, 1323 (11th Cir. 2020). "District courts may admit relevant evidence, which is evidence that 'has *any* tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence.'" United States v. Smith, 967 F.3d 1196, 1205 (11th Cir. 2020) (quoting Fed. R. Evid. 401). However, irrelevant evidence is not admissible. McGregor, 960 F.3d at 1324.

Additionally, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Importantly, "Rule 403 'is an extraordinary remedy which should be used sparingly, and, indeed, the trial court's discretion to exclude evidence as unduly prejudicial is narrowly circumscribed.'" McGregor, 960 F.3d at 1324 (quoting United States v. Cross, 928 F.2d 1030, 1051 (11th Cir. 1991)). "Moreover, [i]n applying Rule 403, courts must

look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." Id. (quoting Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1069 (11th Cir. 2014)) (internal quotation marks omitted).

## II. Discussion

Mr. Velinov, a Bulgarian citizen, is charged with conspiracy to advertise visual depictions of minors engaged in sexually explicit conduct (Count One) and conspiracy to distribute visual depictions of minors engaged in sexually explicit conduct (Count Two) related to his involvement with the "Newstar Websites." (Doc. # 1). Trial is scheduled to begin on January 17, 2023.

Now, the United States seeks an order excluding from trial four categories of argument and evidence. The Court will address each category in turn.

### (1) Depiction of Nudity

First, the United States seeks to prevent Velinov from raising the argument at trial that "a conviction under 18 U.S.C. §§ 2251(d) and (e) or 2252(a)(2) and (b)(1) requires a depiction of nude children or children's nude genitals." (Doc. # 77 at 1). The United States contends that such argument is improper because there is no nudity requirement

in the relevant statutes. (Id. at 4). Indeed, the Eleventh Circuit has acknowledged that "a photograph can be lascivious even if the child is not naked and the depiction is not 'dirty.'" United States v. Hunter, 720 F. App'x 991, 996 (11th Cir. 2017) (citation omitted).

In response, Mr. Velinov agrees that "it would be improper for [him] to argue that, legally, nudity is required." (Doc. # 82 at 2). Nevertheless, he argues that "it would also be wrong to preemptively exclude 'any testimony' or 'any evidence' concerning the Newstar website content which might even tangentially touch on this point" (Id. at 3), because even the United States acknowledges "that lack of nudity is a factor that the jury may consider in determining whether the Newstar Content violates federal law." (Doc. # 77 at 11).

The Court grants the Motion. To be clear, the Motion seeks only to preclude argument by Mr. Velinov that nudity is a legal requirement for a conviction, and Mr. Velinov does not oppose such limited preclusion. As the United States reiterates in its reply, Mr. Velinov "may properly argue to the jury that lack of nudity is a factor in determining whether the images and videos in question depict a 'lascivious exhibition of the genitals or pubic area of any person.'"

4

(Doc. # 89 at 1). Thus, the granting of this Motion does not preclude such argument considering the factor of lack of nudity.

### (2) Defendant's Subjective Belief

Next, the United States seeks to exclude argument or testimony that "the defendant subjectively believed the images and videos trafficked through the Newstar Websites were legal." (Doc. # 77 at 1). As the United States points out, a "defendant's personal belief of the legality of the content . . . is not a defense to the charges in the indictment," rendering such testimony, argument, or evidence irrelevant under Federal Rule of Evidence 401 and highly prejudicial under Rule 403. (Id. at 12).

Indeed, Mr. Velinov's belief that the images at issue were not illegal does not preclude conviction. "[T]o fulfill the knowledge element of § 2252, a defendant simply must be aware of the general nature and character of the material and need not know that the portrayals are illegal." United States v. Knox, 32 F.3d 733, 754 (3d Cir. 1994); see also United States v. Silva, 794 F.3d 173, 182 (1st Cir. 2015) (stating, regarding charge of for receipt of child pornography under 18 U.S.C. § 2252, that "[t]he government did not need to show, however, that the defendant knew the material was in fact

5

illegal at the time of receipt"). "The child pornography laws would be eviscerated if a pedophile's personal opinion about the legality of sexually explicit videos was transformed into the applicable law." Knox, 32 F.3d at 754 (3d Cir. 1994).

Mr. Velinov acknowledges that his subjective belief in the legality of the images on the Newstar websites "would not prevent his conviction" and that "the law does not require that the government prove the Defendant knew that certain images on the Newstar Websites violated any specific federal statute and such argument by the defense would be improper." (Doc. # 82 at 21). Nevertheless, he argues that evidence concerning his subjective belief should not be entirely excluded because "a fair trial requires the defense be permitted to elicit and present testimony and evidence concerning his 'knowledge of the contents, character, and nature of the materials.'" (Id.) (citation omitted). So, he reasons, he should be able to testify that "he believed the content was legal." (Id. at 11).

The Court disagrees with Mr. Velinov that testimony about his subjective beliefs about the legality of certain images is relevant. Rather, such evidence or testimony is irrelevant, unduly prejudicial, and likely to confuse a jury and invite jury nullification. Thus, pursuant to Federal

6

Rules of Evidence 401 and 403, the Motion is granted. Mr. Velinov may not argue or otherwise introduce evidence or testimony to the jury about his subjective belief regarding the legality of the images.

However, as the United States emphasizes (Doc. # 89 at 2-3), the granting of the Motion does not prevent Mr. Velinov from arguing that he did not know what the images on the Newstar Websites depicted or that he never saw any sexually explicit images. Such evidence is relevant as it relates to whether Mr. Velinov knew about the content of the images on the Newstar Websites.

### (3) Potential Penalties for Defendant

The United States also seeks to exclude any evidence or argument about the "potential penalties the defendant may face if convicted." (Doc. # 77 at 1). "Any direct or indirect reference to these potential penalties or punishment could prejudice the jury and confuse it as to what its role is in the trial." (Id. at 18). Thus, the United States seeks to preclude any evidence, argument, or testimony about Mr. Velinov's anticipated sentence — if convicted, he faces a mandatory minimum of 20 years and a maximum of 50 years — as well as "testimony on the defendant's future or career plans, because this would put the issue of penalties in front of the

7

jury." (Id. at 18-19). Also, as to cooperating witnesses, the United States seeks an order preventing Mr. Velinov "from eliciting testimony as to the exact sentence that the cooperating conspirators received." (Id. at 19).

"It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" Shannon v. United States, 512 U.S. 573, 579 (1994) (citation omitted). "Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. Thus, "[i]nformation as to the severity of the sentence the defendant faces is 'extrinsic and prejudicial,' and the trial court is within its discretion to restrict cross-examination that would reveal such information to the jury." United States v. Denham, 437 F. App'x 772, 777 (11th Cir. 2011) (quoting United States v. Garrett, 727 F.2d 1003, 1012 (11th Cir. 1984)).

The Court grants this Motion. Mr. Velinov may not argue or elicit testimony about the potential penalties he faces, including the minimum and maximum prison sentence he may face.

8

He may also not elicit testimony about his future or career plans, as this invites the jury to consider the penalty Mr. Velinov faces if convicted.

Likewise, Mr. Velinov may not elicit from cooperating witnesses the specific amount of jail time they face, as this would reveal to the jury that Mr. Velinov is also facing similarly severe jail time. See United States v. Rushin, 844 F.3d 933, 939 (11th Cir. 2016) (upholding district court's exclusion of cross-examination about the precise number of years cooperating witnesses faced in prison because defense counsel already "address[ed] the possibility that cooperating witnesses had motive to twist their story or lie" and because "the sentence range applicable to these witnesses would reveal the sentence range for defendants" such that questions about witnesses' potential sentences "could invite jury nullification"). While Mr. Velinov highlights that the cooperating witnesses faced 20-year maximum sentences, while he faces a 50-year maximum sentence (Doc. # 82 at 16-17), this fact does not change the Court's analysis. Having a cooperating witness reveal that they faced a 20-year maximum sentence for their participation in the conspiracy with Mr. Velinov will no doubt give the jury the impression that Mr. Velinov is also facing 20 years in prison — a substantial

sentence that creates a risk of confusion and jury nullification.

This limitation on cross-examination of cooperating witnesses, however, will not prevent Mr. Velinov from effectively impeaching these witnesses for potential bias. See Id. ("While it is imperative that a defendant be able to address the reliability and potential bias of a cooperating witness, in this case the precise number of years the cooperating witnesses may have faced provides little, if any, value above those questions defense counsel were permitted to ask. Here, defendants could inquire as to whether cooperating witnesses otherwise faced a more severe penalty or expected to receive a lesser sentence. . . . Moreover, defense counsel specifically argued that these reduced sentences created an incentive for the cooperating witnesses to 'twist the truth in a way that supports what the Government says transpired in this case.'").

**(4) Law of Foreign Countries**

Finally, the United States seeks to exclude from trial any evidence or argument on "any matter pertaining to the law of a foreign country." (Doc. # 77 at 1). Specifically, "[e]vidence or argument concerning the law of another country is irrelevant to this American proceeding, and permitting it

10

at trial poses a serious risk of confusing the jury and prejudicing the government." (Id. at 21); see United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 6375729, at *13 (E.D.N.Y. Dec. 12, 2017) (introduction of evidence concerning foreign law could create an "obvious risk of jury nullification" and "[t]his genuine risk of jury nullification weighs heavily against allowing defense counsel to elicit evidence or make argument about foreign law"), aff'd, 963 F.3d 163 (2d Cir. 2020). Thus, the United States maintains — and this Court agrees — that "foreign law has no application to this proceeding and the defendant should be precluded from introducing evidence or argument concerning it at trial." (Doc. # 77 at 23).

In response, Mr. Velinov "agrees that foreign law, particularly the law of the Defendant's home country, Bulgaria, is not relevant generally to these proceedings" and "it would be improper to argue that conformity with any foreign law excused his conduct here." (Doc. # 82 at 19).

Thus, the Court grants the Motion as to this point. Mr. Velinov is prohibited from testifying, arguing, or presenting evidence to demonstrate that his conduct complied with the laws of some other jurisdiction. To the extent Mr. Velinov expresses his intention to cross-examine the government's

witnesses about the international aspects of the investigation and "foreign law enforcement cooperation" (Id. at 19-20, 22), the Court agrees with the United States that such cross-examination is not covered by the instant Motion. (Doc. # 89 at 10).

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

The United States of America's Motions in Limine (Doc. # 77) are **GRANTED** as set forth herein.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 11th day of January, 2022.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE