IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
UNITED STATES OF AMERICA      \*
                              \*    Case No. 8:21-cr-342
vs.                           \*
                              \*    January 23, 2023
PLAMEN GEORGIEV VELINOV       \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


## JURY TRIAL – DAY 4

Heard in Courtroom 14B
Sam M. Gibbons United States Courthouse
801 N. Florida Avenue
Tampa, FL
January 23, 2023


## BEFORE THE HONORABLE VIRGINIA M. HERNANDEZ COVINGTON

## UNITED STATES DISTRICT JUDGE




Official Court Reporter:      Tana J. Hess, CRR, FCRR, RMR
                              U.S. District Court Reporter
                              Middle District of Florida
                              Tampa Division
                              801 N. Florida Avenue
                              Tampa, FL  33602
                              813.301.5207
                              tana_hess@flmd.uscourts.gov

Proceedings recorded by mechanical stenography using
computer-aided transcription software.

APPEARANCES:


FOR THE GOVERNMENT:

       Kyle P. Reynolds
       U.S. Department of Justice, Criminal Division
       Child Exploitation and Obscenity Section
       1301 New York Ave. NW
       Washington, DC  20530
       202.616.2842
       kyle.reynolds@usdoj.gov

       Karyna Valdes
       U.S. Attorneys Office
       400 North Tampa Street
       Suite 3200
       Tampa,FL  33602
       813.274.6000
       karyna.valdes@usdoj.gov

FOR THE DEFENDANT:

       Christophir A. Kerr
       13801 Walsingham Road
       #A-154
       Largo, FL  33774
       727.492.2551
       christophirkerr@gmail.com

## <u>EXHIBITS</u>

| <u>NUMBER</u> | <u>ADMITTED</u> |
|---|---|
| Government Exhibit 1004O | 14 |

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
| 9:11AM | 1  | (Call to order of the Court.)                                            |
| 9:11AM | 2  | THE COURT:  Good morning, everybody.  Do we have all                      |
| 9:11AM | 3  | the jurors?                                                              |
| 9:11AM | 4  | COURT SECURITY OFFICER:  Yes.                                            |
| 9:11AM | 5  | THE COURT:  Okay.  Great.  Terrific.  I think we have                    |
| 9:11AM | 6  | all the jurors.                                                          |
| 9:11AM | 7  | I granted your motion, Mr. Kerr, on the                                  |
| 9:11AM | 8  | correction of the jury instructions.  I am not reprinting --             |
| 9:11AM | 9  | it's too late for us to reprint them, but I will tell the                |
| 9:11AM | 10 | jurors they need to make those changes.  It's just 14 copies of         |
| 9:11AM | 11 | substantive jury instructions.  So --                                    |
| 9:11AM | 12 | MR. KERR:  I understand.  And one more minor issue.                       |
| 9:12AM | 13 | I discussed this with the Government here this weekend, and I            |
| 9:12AM | 14 | understand that you have to deny this objection, but I'm just            |
| 9:12AM | 15 | doing this for the record.                                               |
| 9:12AM | 16 | THE COURT:  Sure.                                                        |
| 9:12AM | 17 | MR. KERR:  For the appellate record; that I'm going                       |
| 9:12AM | 18 | to object to the language in the -- in both offense                      |
| 9:12AM | 19 | instructions that comes from the Dost factors that's in the             |
| 9:12AM | 20 | language, because I'd like to preserve that objection.  I think          |
| 9:12AM | 21 | that those -- that language renders the statute                          |
| 9:12AM | 22 | unconstitutionally vague.                                                |
| 9:12AM | 23 | THE COURT:  Okay.  That motion is denied.  Let's just                    |
| 9:12AM | 24 | make certain I've got the right places.  Let's see.  So it's            |
| 9:13AM | 25 | instruction 16 and 17.                                                   |

| | | |
|---|---|---|
| 9:13 AM | 1 | **MR. KERR:**  The copy -- the old copy I have is on |
| 9:13 AM | 2 | page 20.  It starts -- it's the first one, I think. |
| 9:13 AM | 3 | **THE COURT:**  Well, let's see.  What I have should be |
| 9:13 AM | 4 | exactly what you have, so we should have exactly the same |
| 9:13 AM | 5 | versions because I read from what you have.  So let's just see. |
| 9:13 AM | 6 | It is on page 19, the first one, the bottom of |
| 9:13 AM | 7 | page 19.  The term sexually explicit conduct means actual or |
| 9:13 AM | 8 | simulated.  And let's see now. |
| 9:13 AM | 9 | **MR. KERR:**  I think the <u>Dost</u> factors start on the next |
| 9:13 AM | 10 | page toward the bottom -- |
| 9:13 AM | 11 | **COURTROOM DEPUTY:**  Your Honor, I think Dana put some |
| 9:13 AM | 12 | fresh ones Friday. |
| 9:13 AM | 13 | **THE COURT:**  Oh, they don't have those new ones? |
| 9:14 AM | 14 | **COURTROOM DEPUTY:**  I don't believe so.  Now that he's |
| 9:14 AM | 15 | speaking, I don't believe so. |
| 9:14 AM | 16 | **THE COURT:**  Yes, they should have those new ones |
| 9:14 AM | 17 | yeah.  I don't know if they're different.  I think those are |
| 9:14 AM | 18 | just the copies for the jury? |
| 9:14 AM | 19 | **COURT SECURITY OFFICER:**  Yes. |
| 9:14 AM | 20 | **THE COURT:**  I think that's all they are.  Those are |
| 9:14 AM | 21 | just copies for the jury. |
| 9:14 AM | 22 | **COURTROOM DEPUTY:**  Let me double-check. |
| 9:14 AM | 23 | **THE COURT:**  So let's just see here.  Pages 19 -- so |
| 9:14 AM | 24 | instead of saying, "Lascivious exhibition of the genitals or |
| 9:14 AM | 25 | pubic area of any person, lascivious exhibition of the anus" -- |

| | | |
|---|---|---|
| 9:14AM | 1 | I'm going to add the word there on page 19, all right?  E, page |
| 9:14AM | 2 | 19?  Okay.  Then let's see.  Page 20.  Yeah, Magaly, they have |
| 9:14AM | 3 | that.  That was handed to them on Friday.  It should have |
| 9:14AM | 4 | been -- no?  Maybe they didn't get it. |
| 9:15AM | 5 | MR. KERR:  I don't think we got final ones. |
| 9:15AM | 6 | COURTROOM DEPUTY:  No, these are the final ones.  I |
| 9:15AM | 7 | just confirmed with Dana, these are the final ones. |
| 9:15AM | 8 | THE COURT:  Okay.  They don't have those? |
| 9:15AM | 9 | COURTROOM DEPUTY:  No.  I'm going to hand them out |
| 9:15AM | 10 | right now. |
| 9:15AM | 11 | THE COURT:  Okay.  We'll hand that out.  Hold on a |
| 9:15AM | 12 | second.  All right then.  So that's on page -- just finished |
| 9:16AM | 13 | page 19.  All right.  So now on page 20, the paragraph |
| 9:16AM | 14 | beginning, "What exactly constitutes a forbidden lascivious |
| 9:16AM | 15 | exhibition." |
| 9:16AM | 16 | MR. KERR:  I think it's a couple of paragraphs below |
| 9:16AM | 17 | that where it says factors -- |
| 9:16AM | 18 | THE COURT:  So you don't want it there?  That's what |
| 9:16AM | 19 | you're saying?  You don't want it on that page?  The change |
| 9:16AM | 20 | should not be made there? |
| 9:16AM | 21 | MR. KERR:  No, just for the record, I'm objecting to |
| 9:16AM | 22 | the Dost factors that are -- that start with -- |
| 9:16AM | 23 | THE COURT:  I'm not talking about that.  I'm making |
| 9:16AM | 24 | the changes right now -- |
| 9:16AM | 25 | MR. KERR:  Oh, I'm sorry. |

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
Middle District of Florida

| | | |
|---|---|---|
| 9:16AM | 1 | **THE COURT:**  -- that you sent to me. |
| 9:16AM | 2 | **MR. KERR:**  I misunderstood. |
| 9:16AM | 3 | **THE COURT:**  So I've already overruled your objection. |
| 9:16AM | 4 | I'm trying to make the changes that you gave us over the |
| 9:17AM | 5 | weekend. |
| 9:17AM | 6 | **MR. KERR:**  I'm sorry. |
| 9:17AM | 7 | **THE COURT:**  After everybody said this was okay and |
| 9:17AM | 8 | copies made, so, you know -- |
| 9:17AM | 9 | **MR. KERR:**  On page 19 -- |
| 9:17AM | 10 | **THE COURT:**  I've already made that change.  Now we're |
| 9:17AM | 11 | on page 20.  Okay.  By the way, I got these jury instructions. |
| 9:17AM | 12 | I think this is what the Government sent, so somehow that got |
| 9:17AM | 13 | left out on your version, Government, right?  Is that right? |
| 9:17AM | 14 | Those words just got left out? |
| 9:17AM | 15 | **MR. REYNOLDS:**  It did, Your Honor.  That came from |
| 9:17AM | 16 | the pattern instructions.  We're also not relying on the anus |
| 9:17AM | 17 | provision, so we didn't include it, but we understand why |
| 9:17AM | 18 | Mr. Kerr wants it in. |
| 9:17AM | 19 | **THE COURT:**  Personally that's what I think, but I had |
| 9:17AM | 20 | assumed that you had taken this from -- so it's not in the |
| 9:17AM | 21 | pattern jury instructions.  It's just in the statute?  Is that |
| 9:17AM | 22 | what it is? |
| 9:17AM | 23 | **MR. REYNOLDS:**  That's correct, Your Honor.  It's a |
| 9:17AM | 24 | recent addition to the statute.  It's from December 2018. |
| 9:18AM | 25 | **THE COURT:**  Yeah, it should be in there then.  If the |

| | | |
|---|---|---|
| 9:18AM | 1 | statute is different and the statute is more recent than the |
| 9:18AM | 2 | pattern jury instructions, it should be in there. |
| 9:18AM | 3 | All right.  Okay.  Let's see.  Page 20. |
| 9:18AM | 4 | Beginning with, "What exactly constitutes a forbidden |
| 9:18AM | 5 | lascivious exhibition?"  Let's see.  I'm going to add the word |
| 9:18AM | 6 | the "anus," genitals, or pubic area.  Right?  That's the second |
| 9:18AM | 7 | one.  So we've got the first one on page 19, the second one on |
| 9:18AM | 8 | page 20.  Now we have twice the paragraph beginning with, |
| 9:18AM | 9 | "Lascivious exhibition means indecent exposure of the anus, |
| 9:18AM | 10 | genitals, or pubic area," right? |
| 9:18AM | 11 | MR. KERR:  Yes, Your Honor. |
| 9:18AM | 12 | THE COURT:  Okay.  Then we've got another change. |
| 9:19AM | 13 | Nude depictions to qualify as lascivious exhibition of the |
| 9:19AM | 14 | anus, genitals, or pubic area of any person, right?  Okay. |
| 9:19AM | 15 | Then we're moving forward.  23.  Let's see.  In |
| 9:19AM | 16 | E, lascivious exhibition of the anus.  Okay.  That's the -- |
| 9:19AM | 17 | MR. KERR:  Same thing on 23 and 24. |
| 9:19AM | 18 | THE COURT:  Okay.  All right.  And then we have |
| 9:19AM | 19 | page 24.  "what exactly constitutes a forbidden lascivious |
| 9:20AM | 20 | exhibition of the anus, genitals," et cetera.  That's on |
| 9:20AM | 21 | page 24. |
| 9:20AM | 22 | And then the last we have the paragraph on |
| 9:20AM | 23 | page 24 beginning, "Lascivious exhibition means indecent |
| 9:20AM | 24 | exposure of the anus."  Okay.  Genitals or pubic area, et |
| 9:20AM | 25 | cetera, et cetera. |

| | | |
|---|---|---|
| 9:20AM | 1 | Then, "Lascivious exhibition of the anus, |
| 9:20AM | 2 | genitals, or pubic area," right?  Are those -- I mean, I think |
| 9:20AM | 3 | that's actually six, seven, eight changes.  Am I leaving any |
| 9:21AM | 4 | one out?  Is that it, Mr. Reynolds, eight?  Those are the |
| 9:21AM | 5 | changes? |
| 9:21AM | 6 | **MR. REYNOLDS:**  Let's see.  Your Honor, I have six on |
| 9:21AM | 7 | pages 23 and 24.  On page 23, I have a change in subsection E. |
| 9:21AM | 8 | **THE COURT:**  Okay.  Wait a minute.  Let me go back to |
| 9:21AM | 9 | what I have.  Let's see.  19.  I have one at the bottom of |
| 9:21AM | 10 | page 19 on E.  Then I have number 2 on, "what exactly |
| 9:21AM | 11 | constitutes a forbidden lascivious exhibition?"  That's |
| 9:21AM | 12 | number 2.  Then I have number 3.  "Lascivious exhibition |
| 9:21AM | 13 | means."  Then I have -- in that same paragraph, I'm also adding |
| 9:21AM | 14 | the word "anus."  That's number 4. |
| 9:21AM | 15 | **MR. REYNOLDS:**  I also have Your Honor -- |
| 9:21AM | 16 | **THE COURT:**  Just a second.  Hold on a minute.  Let me |
| 9:21AM | 17 | just go through mine, and then I'll come back to you.  Number 5 |
| 9:22AM | 18 | is, "Lascivious exhibition of the anus."  That's on page 23. |
| 9:22AM | 19 | Okay.  Then I have on page 24, three times, right?  And that's |
| 9:22AM | 20 | what I have.  Okay.  So that's what I have; is that correct? |
| 9:22AM | 21 | **MR. REYNOLDS:**  So, Your Honor, I have two other -- |
| 9:22AM | 22 | **THE COURT:**  Okay.  But are those correct? |
| 9:22AM | 23 | **MR. REYNOLDS:**  Those are all correct. |
| 9:22AM | 24 | **THE COURT:**  Okay.  Now, what additional ones do you |
| 9:22AM | 25 | have? |

| | | |
|---|---|---|
| 9:22AM | 1 | **MR. REYNOLDS:**  In addition on page 20 -- |
| 9:22AM | 2 | **THE COURT:**  Okay.  Hold on. |
| 9:22AM | 3 | **MR. REYNOLDS:**  In the paragraph beginning with "to |
| 9:22AM | 4 | decide". |
| 9:22AM | 5 | **THE COURT:**  Uh-huh. |
| 9:22AM | 6 | **MR. REYNOLDS:**  Second line of that paragraph, "The |
| 9:22AM | 7 | context and setting in which the anus, genitalia, or pubic area |
| 9:22AM | 8 | is being displayed." |
| 9:22AM | 9 | **THE COURT:**  Okay.  Thank you. |
| 9:22AM | 10 | **MR. REYNOLDS:**  And then the second bullet point down |
| 9:22AM | 11 | below.  "Whether the focal point of the visual depiction is on |
| 9:22AM | 12 | the minor's anus, genitalia, or pubic area." |
| 9:22AM | 13 | **THE COURT:**  Okay.  Got it. |
| 9:22AM | 14 | **MR. REYNOLDS:**  And then conforming changes that |
| 9:22AM | 15 | correspond to those on page 24, which I'm happy to walk |
| 9:23AM | 16 | through. |
| 9:23AM | 17 | **THE COURT:**  Yeah, let's go through it.  I want to |
| 9:23AM | 18 | make certain there is no mistake.  24. |
| 9:23AM | 19 | **MR. REYNOLDS:**  24, I think Your Honor covered some of |
| 9:23AM | 20 | these, but first line of the first paragraph, first line of the |
| 9:23AM | 21 | second paragraph. |
| 9:23AM | 22 | **THE COURT:**  Uh-huh. |
| 9:23AM | 23 | **MR. REYNOLDS:**  Third line of the second paragraph. |
| 9:23AM | 24 | **THE COURT:**  Uh-huh. |
| 9:23AM | 25 | **MR. REYNOLDS:**  Second line of the fourth -- excuse |

9:23AM   1   me, the third paragraph beginning with "to decide."

9:23AM   2          THE COURT:  Uh-huh.

9:23AM   3          MR. REYNOLDS:  And then the second bullet point.

9:23AM   4          THE COURT:  All right.  So I'm going to add the word

9:23AM   5   "anus" before genitalia on that paragraph.  Second bullet

9:23AM   6   point, "On the minor's anus, genitalia or pubic area."  Okay.

9:23AM   7   Got it.  Is that it?

9:23AM   8          MR. REYNOLDS:  That's it.

9:23AM   9          THE COURT:  Okay.  Thank you, Mr. Reynolds.

9:23AM  10          Mr. Kerr, anything with respect to this?  And

9:23AM  11   then I'll let you make your record with respect to that other

9:23AM  12   matter if there's something you need to add to it.  Any place

9:23AM  13   here where I need to add that phraseology?

9:23AM  14          MR. KERR:  No, Your Honor.

9:23AM  15          THE COURT:  Okay.  Now, after I read this, if you see

9:24AM  16   that I have missed one -- because sometimes you don't catch it

9:24AM  17   until you read it to the jury -- just, you know, stand up.

9:24AM  18   I'll try to, you know, see you out of the corner of my eye.

9:24AM  19   I'll meet you at sidebar, and we'll -- I'll just tell the jury

9:24AM  20   to just add the phraseology to their instructions.  That's how

9:24AM  21   we're going to do it.

9:24AM  22          Now -- okay, Mr. Kerr.  Now circling back to

9:24AM  23   your objection, go ahead.

9:24AM  24          MR. KERR:  I just wanted to object to the language in

9:24AM  25   both instructions that is from the <u>Dost</u> factors particularly.

9:24AM  1    **THE COURT:**  Right.

9:24AM  2    **MR. KERR:**  That's all.

9:24AM  3    **THE COURT:**  Okay.  And I have that, and I overruled

9:24AM  4  it, your objection.  Where on the instruction -- just so the

9:24AM  5  record is crystal clear where I cut you off because I needed to

9:24AM  6  focus on this first, and I cut you off, and I didn't let you

9:24AM  7  make your whole argument.  Tell me where that should be.

9:24AM  8    **MR. KERR:**  That is -- in discussing with Mr. Reynolds

9:25AM  9  here, I believe that it begins at "Factors you may consider" on

9:25AM 10  page 20; is that correct?

9:25AM 11    **MR. REYNOLDS:**  That's correct.

9:25AM 12    **MR. KERR:**  Okay.  And it ends at -- the last sentence

9:25AM 13  is, "A visual depiction need not have all these factors to be a

9:25AM 14  lascivious exhibition."  That's for that instruction.

9:25AM 15    **THE COURT:**  Okay.

9:25AM 16    **MR. KERR:**  Those lines inclusive.

9:25AM 17    **THE COURT:**  Okay.

9:25AM 18    **MR. KERR:**  And then page 24 beginning again with

9:25AM 19  "Factors you may consider include" on page 24 the middle of the

9:25AM 20  page until the end of the page.

9:25AM 21    **THE COURT:**  Okay.  Got it.  Okay.  So the record is

9:25AM 22  clear on that.  Is there anything else that you would like to

9:25AM 23  say with respect to that?

9:25AM 24    **MR. KERR:**  Nothing, Your Honor.  But while you're

9:25AM 25  calling in the jury, may I -- may I run down the hall for just

| | | |
|---|---|---|
| 9:25AM | 1 | a minute? |
| 9:25AM | 2 | THE COURT:  Okay.  Of course.  And it's not a |
| 9:26AM | 3 | problem.  Go ahead and do it.  I won't bring the jury in.  I'm |
| 9:26AM | 4 | sorry? |
| 9:26AM | 5 | MR. REYNOLDS:  Your Honor, before Mr. Kerr leaves, |
| 9:26AM | 6 | may I address one housekeeping matter? |
| 9:26AM | 7 | THE COURT:  Sure. |
| 9:26AM | 8 | MR. REYNOLDS:  So during the presentation of evidence |
| 9:26AM | 9 | on Friday, the Government authenticated an exhibit, Exhibit |
| 9:26AM | 10 | 1004O.  It was put up on the screen and shown to the jury. |
| 9:26AM | 11 | When we met with the courtroom deputy after court to ensure |
| 9:26AM | 12 | that everything had been -- had been introduced, there was a -- |
| 9:26AM | 13 | she checked the official record.  The official record did not |
| 9:26AM | 14 | reflect that the exhibit had been entered into evidence. |
| 9:26AM | 15 | THE COURT:  Okay. |
| 9:26AM | 16 | MR. REYNOLDS:  I spoke with Mr. Kerr ahead of time. |
| 9:26AM | 17 | Mr. Kerr does not object to this exhibit being -- going back to |
| 9:26AM | 18 | the jury. |
| 9:26AM | 19 | THE COURT:  Okay. |
| 9:26AM | 20 | MR. REYNOLDS:  So we would ask the Court to formally |
| 9:26AM | 21 | admit the exhibit and allow it to go back to the jury. |
| 9:26AM | 22 | THE COURT:  All right.  Well, thank you for that, |
| 9:26AM | 23 | Mr. Kerr.  Normally I would reopen the evidence to permit it, |
| 9:26AM | 24 | but I very much appreciate your -- |
| 9:26AM | 25 | MR. KERR:  No objection. |

| | |
|---|---|
| 9:26AM | 1 |

**THE COURT:** -- collegiality on that, Mr. Kerr, so I will now receive exhibit -- what was it a thousand --

**MR. REYNOLDS:** 1004O.

**THE COURT:** 1004O is formally received into evidence. Do you need me to do that in front of the jury, or are you okay with me doing it this way?

**MR. REYNOLDS:** I think we're fine with you doing it this way, Your Honor.

**THE COURT:** All right.

**MR. REYNOLDS:** Thank you.

**THE COURT:** All right. Well, if anybody needs to take a short break, I am not leaving, please feel free to do that. We'll get started as soon as Mr. Kerr gets back or anybody else. Please get up and go to the bathroom. That's fine, too.

(Pause.)

**THE COURT:** All right. Everybody is here? Present and accounted for? Okay. And we've got the jury? All right. So I will bring the jury in. What did I say? I'd give you each up to an hour. I forget what I said.

**COURTROOM DEPUTY:** Yes.

**MR. REYNOLDS:** And hour leaving up to 20 for rebuttal, Your Honor.

**THE COURT:** That's right. Thank you. Magaly, you're going to keep time, and let him know when he's got five minutes

9:29AM  1    left.

2              (Jury in at 9:30 a.m.)

9:30AM  3              **THE COURT:**  All right.  Welcome back, ladies and

9:30AM  4    gentlemen.

5              Everybody can please be seated.

9:30AM  6              We are now going to the next to the last

9:30AM  7    proceeding in our trial, and that is closing arguments.  I've

9:30AM  8    given each side up to one hour for closing arguments.  Because

9:30AM  9    the Government always has the burden of proof and that doesn't

9:30AM  10   shift to the defense, I'm allowing them to reserve up to 20

9:30AM  11   minutes for a rebuttal closing argument.  The defense is not

9:30AM  12   given that opportunity.

9:30AM  13             So as I said, I don't think that they will take

9:30AM  14   the full time, but they have that time allotted to them, and

9:30AM  15   the courtroom deputy will let counsel know when they have five

9:30AM  16   minutes left as to the 40 minutes.  Just know that when you go

9:30AM  17   over that or if you go over that, that time will be deducted

9:30AM  18   from your rebuttal closing argument, all right?

9:30AM  19             So once the lawyers finish their closing

9:30AM  20   arguments, we will then hand out the jury instructions.  I have

9:31AM  21   those for you, and you can follow along with me.  We will take

9:31AM  22   a break, short break before we do that, just so you know, but

9:31AM  23   we will be finished with all this this morning.  Then you'll

9:31AM  24   have -- you can have lunch and then begin your deliberations,

9:31AM  25   all right?  So that's the schedule for today.

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
Middle District of Florida

| | | |
|---|---|---|
| 9:31 AM | 1 | I now ask that you give the lawyers your |
| 9:31 AM | 2 | attention as I recognize them in turn for closing arguments. |
| 9:31 AM | 3 | Mr. Reynolds, I recognize you now. |
| 9:31 AM | 4 | MR. REYNOLDS: Thank you, Your Honor. May I move the |
| 9:31 AM | 5 | monitor to in front of the jury? |
| 9:31 AM | 6 | THE COURT: Yes. Yes, absolutely. |
| 9:32 AM | 7 | MR. REYNOLDS: Ladies and gentlemen, good morning. |
| 9:32 AM | 8 | You've seen the communications in this case. He refers to an |
| 9:32 AM | 9 | underaged girl as quote "nuclear sexy." He complains about a |
| 9:32 AM | 10 | video because the girl in it is wearing some shit skirt that |
| 9:32 AM | 11 | shows nothing really. And he says another video is fine |
| 9:32 AM | 12 | because at least the girl in it shows some panties. |
| 9:32 AM | 13 | These are the statements of someone who knows |
| 9:32 AM | 14 | full well that the Newstar websites are dedicated to the sexual |
| 9:32 AM | 15 | exploitation of children. These are the statements of someone |
| 9:32 AM | 16 | who is on the inside of this international criminal enterprise |
| 9:32 AM | 17 | dedicated to exploiting those children for money. These are |
| 9:33 AM | 18 | the statements of this Defendant, Plamen Velinov. |
| 9:33 AM | 19 | Ladies and gentlemen, he's guilty, not because I |
| 9:33 AM | 20 | say so or Ms. Valdes says so or Special Agent Garcia or the |
| 9:33 AM | 21 | Departments of Homeland Security or Justice. That's not why |
| 9:33 AM | 22 | he's guilty. He's guilty because the evidence put before you |
| 9:33 AM | 23 | during this case proves beyond a reasonable doubt, beyond any |
| 9:33 AM | 24 | reasonable doubt that he did what he's accused of. He |
| 9:33 AM | 25 | conspired with Ken Power and Mark Bjorkman and others to |

9:33AM  1  advertise and to distribute illegal sexual images of children

9:33AM  2  over the Newstar websites.

9:33AM  3           Now, you've heard a lot of testimony in this

9:33AM  4  case, and you've seen a lot of evidence.  Some of it came from

9:33AM  5  experts.  Some of it was in Bulgarian, and you might be

9:33AM  6  thinking to yourself, this is a really complicated case, but

9:33AM  7  it's not.  This is a very serious case, but it is also very

9:34AM  8  simple.

9:34AM  9           So simple, in fact, that there are only three

9:34AM  10  points, three essential points that I want to make today.  I

9:34AM  11  hope you remember more than these three points, but these are

9:34AM  12  the three points that I'm asking you to remember.  And I'll

9:34AM  13  tell you right now, just for your information, this slide deck

9:34AM  14  will not be going back with you to the jury room, so if there's

9:34AM  15  anything you consider important, I would encourage you to write

9:34AM  16  it down.

9:34AM  17           But the three points are as follows:  Number 1,

9:34AM  18  images and videos on the Newstar websites showed the lascivious

9:34AM  19  exhibition of minors' genitals and pubic areas; number 2, there

9:34AM  20  was a conspiracy to advertise and distribute those images and

9:34AM  21  videos over the Newstar websites; and number 3, the Defendant

9:34AM  22  was part of that conspiracy, and he knew full well the nature

9:34AM  23  and content of those images and videos.

9:35AM  24           Let's take the first one first.  The Government

9:35AM  25  alleges in this case that Mr. Velinov conspired with others to

9:35 AM   1   advertise and to distribute the visual depictions of minors

9:35 AM   2   engaged in sexually explicit conduct.  Now, I want to say a few

9:35 AM   3   things about this.  First of all, there's a phrase you're not

9:35 AM   4   going to hear me use that much today, and that phrase is "child

9:35 AM   5   pornography."  Why am I not going to use it?  Well, I assure

9:35 AM   6   you it's not because the Government thinks this isn't child

9:35 AM   7   pornography, because the Government absolutely thinks this is

9:35 AM   8   child pornography.  There are two reasons I'm not going to use

9:35 AM   9   this.  The first is that the charges the Government has brought

9:35 AM  10   against Mr. Velinov don't use the term "child pornography."

9:35 AM  11   Judge Covington is not going to instruct you on the meaning of

9:35 AM  12   the term "child pornography."  She is going to instruct you on

9:35 AM  13   the meaning of the term "visual depictions," "minors,"

9:35 AM  14   "sexually explicit conduct."

9:35 AM  15           And the other reason is child pornography might

9:36 AM  16   be a phrase that you've heard in your day-to-day lives.  Maybe

9:36 AM  17   you've read articles about it in the newspaper.  Maybe you've

9:36 AM  18   seen something about child pornography on TV.  I'm sure

9:36 AM  19   everyone else has, and when that happens, sometimes people form

9:36 AM  20   an opinion about what child pornography is or is not that may

9:36 AM  21   not be the same as what the law requires.  And it is essential

9:36 AM  22   to our criminal justice system that jurors follow what the law

9:36 AM  23   requires instead of what they believe a word means.  I'm not

9:36 AM  24   saying this is the case.  I'm just saying this is another

9:36 AM  25   reason why the Government is not going to focus on this term.

| | | |
|---|---|---|
| 9:36AM | 1 | It's going to focus on the legal terms "visual depictions," |
| 9:36AM | 2 | "minors," "sexually explicit conduct." |
| 9:36AM | 3 | And the last point I want to make is that when |
| 9:36AM | 4 | I'm talking to you about the law, what I'm talking to you about |
| 9:36AM | 5 | is how I anticipate Judge Covington will instruct you.  There |
| 9:36AM | 6 | is only one person in this room who gets to tell you what the |
| 9:37AM | 7 | law is, and she is wearing a black robe.  I can't tell you what |
| 9:37AM | 8 | the law is.  Mr. Kerr can't tell you what the law is.  If |
| 9:37AM | 9 | anything Mr. Kerr or I say conflicts with Judge Covington's |
| 9:37AM | 10 | instructions, you must disregard that and follow Judge |
| 9:37AM | 11 | Covington's instructions. |
| 9:37AM | 12 | Here's how I anticipate she's going to instruct |
| 9:37AM | 13 | you.  I believe that she will instruct you that visual |
| 9:37AM | 14 | depictions includes pictures and videos.  The Government does |
| 9:37AM | 15 | not believe that this is a contested point.  There are |
| 9:37AM | 16 | obviously videos and images involved in this case. |
| 9:37AM | 17 | Minors include people under the age of 18. |
| 9:37AM | 18 | Again, does not appear that this is contested.  You've seen |
| 9:37AM | 19 | these images.  These children are visibly prepubescent.  Some |
| 9:37AM | 20 | of them appear to be as young as 6.  The oldest might be as old |
| 9:37AM | 21 | as 12 or 13. |
| 9:37AM | 22 | Sexually explicit conduct is something I want to |
| 9:37AM | 23 | focus on for a minute because we believe that Mr. Kerr may |
| 9:37AM | 24 | address this point. |
| 9:38AM | 25 | Sexually explicit conduct can mean a number of |

9:38AM 1    things.  It can mean sex acts.  It can mean oral sex.  It can

9:38AM 2    mean anal sex.  It can mean vaginal sex, but it doesn't have to

9:38AM 3    mean that.  Sexually explicit conduct includes lascivious

9:38AM 4    exhibition of the anus, genitals, or pubic area of any person.

9:38AM 5    To the extent that you've heard anything during this trial that

9:38AM 6    suggests to you that the Government has to prove that the

9:38AM 7    images contain sex acts, that is absolutely wrong.  The

9:38AM 8    Government can proceed in this trial by proving that the images

9:38AM 9    depicted the lascivious exhibition of the anus, genitals, or

9:38AM 10   pubic area of any person.

9:38AM 11          So what does this mean?  Lascivious is

9:38AM 12   essentially a fancy word for sexual.  Lascivious exhibition

9:38AM 13   means indecent exposure of the genitals or pubic area usually

9:38AM 14   to incite lust, sexual, lustful, indecent.  We submit to you,

9:38AM 15   ladies and gentlemen, that if an image can be described as

9:39AM 16   nuclear sexy, it is absolutely lascivious.

9:39AM 17          One other point that I believe Judge Covington

9:39AM 18   will instruct you on are that visual depictions do not need to

9:39AM 19   be nude depictions to qualify as lascivious exhibition of the

9:39AM 20   genitals or pubic area of any person.  I cannot make this clear

9:39AM 21   enough.  The law is crystal clear.  Nudity is not required as

9:39AM 22   long as the images are otherwise -- otherwise depict a

9:39AM 23   lascivious exhibition of the genitals or pubic area.  To the

9:39AM 24   extent that you have heard anything during this trial that

9:39AM 25   suggests that nudity is required, that is absolutely wrong.  So

```
9:39AM    1    this is the legal standard, the Government submits to you.
9:39AM    2    Lascivious exhibition of minors' genitals or pubic areas,
9:39AM    3    whether or not these pubic areas are nude.  And with that legal
9:39AM    4    standard in mind, we submit to you that simply looking at the
9:40AM    5    images proves the Government's case beyond a reasonable doubt.
9:40AM    6              This is from Government Exhibit 350, page 5, the
9:40AM    7    model Sweet ███████ also known as Sweet ███████ She's lying
9:40AM    8    on her back.  Her legs are spread as far as they possibly can
9:40AM    9    be.  She's looking into the camera.  She's wearing some kind of
9:40AM   10    bra and panty set.  Her skirt has been hiked up to expose her
9:40AM   11    underwear.  You can see her vagina through her underwear.  This
9:40AM   12    is plainly lascivious, plainly sexual on its face.
9:40AM   13              Another image, same girl, Sweet ████████ She's
9:40AM   14    wearing some kind of police gown that's been unbuttoned.  She's
9:40AM   15    spreading her legs as far as they can go.  Her hand is touching
9:40AM   16    her vagina, perhaps suggesting that she is pleasuring herself
9:40AM   17    or about to insert a finger into herself.  There is no
9:40AM   18    non-sexual interpretation of this image.  It is plainly
9:40AM   19    lascivious.  She is plainly exhibiting her genitals and pubic
9:41AM   20    area.
9:41AM   21              You've seen this before, Newstar ██████ same
9:41AM   22    thing.  She's lying on her back.  She has her hand behind her
9:41AM   23    head, spreading her legs for the camera, staring into the
9:41AM   24    camera.  You can see her vagina through her underwear.  Plainly
9:41AM   25    sexual.
```

| | |
|---|---|
| 9:41AM | 1 |
| 9:41AM | 2 |
| 9:41AM | 3 |
| 9:41AM | 4 |
| 9:41AM | 5 |
| 9:41AM | 6 |
| 9:41AM | 7 |
| 9:41AM | 8 |
| 9:41AM | 9 |
| 9:41AM | 10 |
| 9:41AM | 11 |
| 9:41AM | 12 |
| 9:41AM | 13 |
| 9:42AM | 14 |
| 9:42AM | 15 |
| 9:42AM | 16 |
| 9:42AM | 17 |
| 9:42AM | 18 |
| 9:42AM | 19 |
| 9:42AM | 20 |
| 9:42AM | 21 |
| 9:42AM | 22 |
| 9:42AM | 23 |
| 9:42AM | 24 |
| 9:42AM | 25 |

You've also seen this image.  This was one of the images that Special Agent Boos captured when she did her undercover downloads, Sweet ████████  She's dressed in some kind of cheerleader costume.  Her skirt has been pulled up to expose her genital area that's covered with lacy underwear. Look at the shirt.  Look at the shirt.  The logo is cut off. It is cut off right in the middle.  It appears as if someone has taken a pair of scissors and cut this shirt so it falls just below the child's nipples.  Again, plainly sexual, plainly lascivious, plainly an exhibition of the child's genitals or pubic area.

Some of these images, as we've shown you -- not all, but some of them depict the genitals of the children underneath their underwear.

On the left, this is the model Sweet ████ or Sweet ████████   Special Agent Garcia testified this is a real person.  She has seen her in the flesh.  I don't know if you can see this in the back, but this is Government Exhibit 350. She's wearing thong underwear and four-inch high heels maybe. Her underwear is so revealing that you can see part of her labia inside of her underwear.

On the right, Sweet ██████  Again, you can see this girl's genitals through her transparent underwear.

Some of the images do not depict transparent underwear, but they nonetheless appear to have been staged and

|         |    |                                                                      |
|---------|----|----------------------------------------------------------------------|
| 9:42 AM | 1  | modified to accentuate the outlines of the girl's genitals.          |
| 9:42 AM | 2  | Here are two images.  On the right Sweet ████ again another           |
| 9:42 AM | 3  | child -- or an adult now who Special Agent Garcia has seen in         |
| 9:42 AM | 4  | the flesh who is wearing some kind of bizarre suspender and           |
| 9:43 AM | 5  | underwear combination.  It looks as if someone has pulled it          |
| 9:43 AM | 6  | back to accentuate the outline of her genitals.  Genitals are         |
| 9:43 AM | 7  | being exposed.  They are plainly sexual.                              |
| 9:43 AM | 8  | We submit to you, ladies and gentlemen, that the                     |
| 9:43 AM | 9  | images we have shown you during this trial is enough for you to      |
| 9:43 AM | 10 | conclude that these images depict the lascivious exhibition of       |
| 9:43 AM | 11 | minors' genitals and pubic areas.                                    |
| 9:43 AM | 12 | We haven't shown you every single exhibit in                         |
| 9:43 AM | 13 | evidence.  Remember, Mr. Ali testified there are literally           |
| 9:43 AM | 14 | countless images that look like this.  If you have any doubt,        |
| 9:43 AM | 15 | examine the Government's evidence in the jury room.  Government      |
| 9:43 AM | 16 | Exhibit 342, a large collection of images.  Government               |
| 9:43 AM | 17 | Exhibit 350, another large collection of images.  Government         |
| 9:43 AM | 18 | Exhibit 344, examples of -- examples of images in which the          |
| 9:43 AM | 19 | girls' genitals are visible either through their transparent         |
| 9:43 AM | 20 | underwear or because their outline of their genitals is fully        |
| 9:44 AM | 21 | visible because their pants are pulled so tight.  If there's         |
| 9:44 AM | 22 | any doubt, please, I encourage you, examine the Government's         |
| 9:44 AM | 23 | evidence.                                                            |
| 9:44 AM | 24 | I anticipate that Judge Covington will instruct                      |
| 9:44 AM | 25 | you that there are some factors that you can take into account       |

9:44AM  1    in determining whether an exhibition is a lascivious

9:44AM  2    exhibition.  You don't have to take these factors into account.

9:44AM  3    This is not a checklist.  It is not a mechanical checklist that

9:44AM  4    you go through.  Potentially helpful factors that you can look

9:44AM  5    to in determining whether an image is lascivious.  They don't

9:44AM  6    all need to be present in order for you to find that an image

9:44AM  7    is lascivious.  They include things like whether the focal

9:44AM  8    point of the depiction is on the minor's genitals; whether the

9:44AM  9    setting of the depiction is sexually inviting, for example,

9:44AM  10   involving a pose associated with sexual activity; whether the

9:44AM  11   minor is depicted in an unnatural pose or inappropriate attire;

9:44AM  12   whether the minor is partially clothed or nude; whether the

9:45AM  13   depiction appears to convey willingness to engage in sexual

9:45AM  14   activity; and whether the depiction appears to have been

9:45AM  15   designed to elicit a sexual response of the viewer.

9:45AM  16            Now, I reiterate, we don't have to show that all

9:45AM  17   of these factors are present in this case, but they all are.

9:45AM  18   No one could possibly disagree that many of these images -- in

9:45AM  19   many of these images, the focal point of the image is the

9:45AM  20   minors' genitals and pubic area.  They are staged in such a

9:45AM  21   way, they are thrust into the camera, the eye is drawn there

9:45AM  22   immediately upon looking at the images.

9:45AM  23            They are poses associated with sexual activity.

9:45AM  24   Of course they are.  You are all adults.  That's why you were

9:45AM  25   picked for the jury service.  The Government does not need to

| | | |
|---|---|---|
| 9:45AM | 1 | explain to you the significance of a little girl lying on her |
| 9:45AM | 2 | back spreading her legs as far as they possibly can go with her |
| 9:45AM | 3 | hands behind her head while she stares in the camera.  The |
| 9:45AM | 4 | Government does not need to explain to you the significance of |
| 9:45AM | 5 | a little girl on her hands and knees with her face down on the |
| 9:46AM | 6 | ground and her rear end up in the air looking back on the |
| 9:46AM | 7 | camera.  These images evoke sexual intercourse.  That is why |
| 9:46AM | 8 | they were staged that way. |
| 9:46AM | 9 | Unnatural poses.  These are poses all throughout |
| 9:46AM | 10 | designed to accentuate and further expose the children's |
| 9:46AM | 11 | genitals and pubic areas.  That's the point. |
| 9:46AM | 12 | Inappropriate attire.  Just look.  Look at what |
| 9:46AM | 13 | these girls are wearing in these images.  Just look at these. |
| 9:46AM | 14 | In the upper left, you see -- this is all from Government |
| 9:46AM | 15 | Exhibit 342.  We have a girl who's wearing some kind of shirt |
| 9:46AM | 16 | and tie combo rolled up to expose her midriff.  She has a mini |
| 9:46AM | 17 | skirt on to show her underwear.  The girl below is in a Santa |
| 9:46AM | 18 | suit with thong underwear wearing four-inch heels maybe, red |
| 9:46AM | 19 | stockings that go up to her mid thigh.  The girl on the right |
| 9:46AM | 20 | is wearing bunny ears and a bow tie and a bra and panty set. |
| 9:47AM | 21 | This is obviously inappropriate for girls of this age.  Look at |
| 9:47AM | 22 | this girl on the left.  Again, Sweet ███ a real person who |
| 9:47AM | 23 | Special Agent Garcia has seen in the flesh.  She's wearing a |
| 9:47AM | 24 | bikini that is so small and so revealing that you can see part |
| 9:47AM | 25 | of her pubic area to the side.  This is obviously inappropriate |

| | | |
|---|---|---|
| 9:47AM | 1 | for young children.  It is obviously sexual. |
| 9:47AM | 2 | Willingness to engage in sexual activity. |
| 9:47AM | 3 | Again, going back, poses associated with sexual activity, and |
| 9:47AM | 4 | there are some images, as one of our witnesses testified, that |
| 9:47AM | 5 | involve little girls and little boys rubbing up against each |
| 9:47AM | 6 | other, engaging in the type of behavior that you see here. |
| 9:47AM | 7 | This obviously connotes a willingness and likelihood that |
| 9:47AM | 8 | they're engaging in sexual activity. |
| 9:47AM | 9 | And again, we don't have to prove that the |
| 9:47AM | 10 | minors are nude.  You can see their genitals, but the minors in |
| 9:47AM | 11 | this case are barely clothed.  It's not correct to say they're |
| 9:47AM | 12 | fully clothed.  These images show an abundant amount of skin, |
| 9:48AM | 13 | minors constantly in bras and panties, bikinis, and bizarre |
| 9:48AM | 14 | costumes showing their midriffs, showing their shoulders, |
| 9:48AM | 15 | showing large portions of their bodies. |
| 9:48AM | 16 | All of these factors go to the notion that these |
| 9:48AM | 17 | images are plainly and obviously designed to elicit a sexual |
| 9:48AM | 18 | response of the viewer.  That's what this is for.  That's why |
| 9:48AM | 19 | you see little girls spreading legs.  That's why you see little |
| 9:48AM | 20 | girls in bizarre costumes. |
| 9:48AM | 21 | I want to focus a little bit on something that |
| 9:48AM | 22 | you're going to see in the jury instructions for a moment, and |
| 9:48AM | 23 | that's something called child erotica.  When Judge Covington |
| 9:48AM | 24 | reads the jury instructions to you, you're going to hear that |
| 9:48AM | 25 | there's some called child erotica which consists of merely |

| | | |
|---|---|---|
| 9:48AM | 1 | sexually suggestive images of children that don't meet the |
| 9:48AM | 2 | definition of sexually explicit conduct.  The concept of child |
| 9:48AM | 3 | erotica stands for the proposition that not every sexual image |
| 9:48AM | 4 | of a child is illegal, and that's true.  That's just the law. |
| 9:49AM | 5 | Images that are sexual but do not involve a lascivious |
| 9:49AM | 6 | exhibition of the genitals or pubic area or any other factor |
| 9:49AM | 7 | that makes it sexually explicit conduct, those are legal |
| 9:49AM | 8 | images.  May not like it, it may be creepy, it may be |
| 9:49AM | 9 | offensive, but that's the case.  But images that do depict a |
| 9:49AM | 10 | lascivious exhibition of a minor's genitals or pubic area are |
| 9:49AM | 11 | not child erotica.  They are illegal images, and I want to show |
| 9:49AM | 12 | you some examples. |
| 9:49AM | 13 | Here's one we might call child erotica light.  All of |
| 9:49AM | 14 | these examples are taken from this website, and the website |
| 9:49AM | 15 | contains child erotica, absolutely.  It contains more child |
| 9:49AM | 16 | erotica than it contains illegal images.  The Government's |
| 9:49AM | 17 | witnesses consistently testified that not every image on this |
| 9:49AM | 18 | was sexual.  But here are some images.  You've got a young |
| 9:49AM | 19 | girl, Newstar ███████ showing her midriff, wearing some kind |
| 9:50AM | 20 | of mini skirt, dressed in a bikini, blowing kisses.  And you |
| 9:50AM | 21 | have Sweet ███████ in this weird bridal thing with a parasol. |
| 9:50AM | 22 | These images have some sexual energy to them clearly, |
| 9:50AM | 23 | especially in light overall context of the website, but in none |
| 9:50AM | 24 | of these images are they displaying their genitals to the |
| 9:50AM | 25 | camera, so these images are not illegal. |

| | | |
|---|---|---|
| 9:50AM | 1 | All right.  Let's take it up a notch.  Here's |
| 9:50AM | 2 | some more child erotica from the websites.  On the left, you've |
| 9:50AM | 3 | got a little girl, Newstar ███████ on her knees in front of a |
| 9:50AM | 4 | boy rubbing his chest.  He's barely dressed.  Again, ladies and |
| 9:50AM | 5 | gentlemen, I do not need to tell you what the significance of a |
| 9:50AM | 6 | little girl on her knees in front of a male is.  It suggests |
| 9:50AM | 7 | that she's about to perform oral sex on him.  That is clearly |
| 9:50AM | 8 | the point of this image.  In the middle you have the model, |
| 9:50AM | 9 | Sweet ███████████ taking off her bra.  On the right, you have a |
| 9:50AM | 10 | little girl and a little boy whose legs are intertwined look as |
| 9:51AM | 11 | though they're about to kiss.  These are sexual images. |
| 9:51AM | 12 | They're obviously sexual, but they don't depict the lascivious |
| 9:51AM | 13 | exhibition of their genitals or pubic area.  So these are child |
| 9:51AM | 14 | erotica only. |
| 9:51AM | 15 | These images are not child erotica.  These |
| 9:51AM | 16 | images clearly and plainly depict children lasciviously |
| 9:51AM | 17 | exhibiting their genitals and pubic areas.  These aren't just |
| 9:51AM | 18 | merely sexually suggestive.  These are little girls spreading |
| 9:51AM | 19 | their legs exposing their genital and pubic areas to the |
| 9:51AM | 20 | camera.  This is an example of images on the Newstar websites |
| 9:51AM | 21 | that are illegal.  There are hundreds of such examples. |
| 9:51AM | 22 | I'd ask you to think a little bit about what |
| 9:51AM | 23 | these images are for and the nature of the images.  Judge |
| 9:51AM | 24 | Covington is going to instruct you that what constitutes a |
| 9:51AM | 25 | forbidden lascivious exhibition of the genitals or pubic area |

| | | |
|---|---|---|
| 9:51 AM | 1 | and how that differs from an innocuous photograph of a naked |
| 9:52 AM | 2 | child -- for example, a family photograph of a child taking a |
| 9:52 AM | 3 | bath or an artistic masterpiece portraying a naked child |
| 9:52 AM | 4 | model -- is not concrete.  When you look at these images, I |
| 9:52 AM | 5 | want to ask yourself these questions:  Do they look like a |
| 9:52 AM | 6 | family photograph of a child taking a bath?  Do they look like |
| 9:52 AM | 7 | an artistic masterpiece portraying a child model?  Do these |
| 9:52 AM | 8 | images look like anything you might ever see in underwear |
| 9:52 AM | 9 | catalog?  Do they look like anything you might ever see on |
| 9:52 AM | 10 | television?  Do they look like anything you might see on a |
| 9:52 AM | 11 | billboard?  Do they look like anything you might see in your |
| 9:52 AM | 12 | daily life?  Do they look like anything you might ever see in a |
| 9:52 AM | 13 | children's beauty pageant?  The answer is no, no, no. |
| 9:52 AM | 14 | Adult women do not pose this way in public |
| 9:52 AM | 15 | outside the pornographic magazines.  If you look at a |
| 9:52 AM | 16 | Victoria's Secret catalog, you will not see adult women posing |
| 9:53 AM | 17 | this way, much less children posing this way. |
| 9:53 AM | 18 | And I want to be clear.  These websites are |
| 9:53 AM | 19 | advertised as modeling websites, but they're not.  They're not |
| 9:53 AM | 20 | modeling websites.  Modeling means selling something.  You've |
| 9:53 AM | 21 | seen commercial advertisements that contain models.  Something |
| 9:53 AM | 22 | is always for sale.  They're advertising watches.  They're |
| 9:53 AM | 23 | advertising perfume.  They're advertising fashion items. |
| 9:53 AM | 24 | They're advertising alcohol.  Nothing is for sale on this |
| 9:53 AM | 25 | website other than these pictures.  Can't buy the clothing. |

| | |
|---|---|
| 9:53 AM | 1 |

You can't buy the bikinis.  You can't buy the underwear.  You can't buy the props.

This is not a modeling agency.  You cannot contact the Newstar website to book these children for modeling gigs.  You can't do it.  The only thing for sale over these websites is sexual images of children's bodies.  There is no conceivable non-sexual purpose for the images on these websites, no possible non-sexual images.  This is pornography.

Now, I'd like to focus a little bit on this disclaimer which you've seen -- we'll call it a disclaimer, that you've seen during the presentation of the evidence.  This one that says, "The content on these websites is 100 percent legal and 100 percent not child pornography."  This disclaimer is legally meaningless, and it's legally meaningless because it's not a defense to a crime that you said you weren't committing it.  Imagine a different defendant who's on trial for the distribution of heroin, and imagine that his defense was that he put a little sticker on every single package that says, "This is 100 percent legal, and this is 100 percent not heroin."  That's meaningless.  He would still be arrested.  He would still be prosecuted.  He would still be -- he would still go to jail.  You cannot just say you're not committing a crime and expect to be found not guilty.

But I think it goes further than that, and I want to be clear.  We haven't produced any evidence about who

| | | |
|---|---|---|
| 9:55AM | 1 | wrote this.  We don't know who wrote it.  It could have been |
| 9:55AM | 2 | the Defendant.  It could have been Ken Power.  It could have |
| 9:55AM | 3 | been someone else, but this is part of the websites, and it's |
| 9:55AM | 4 | part of the conspiracy.  Because Mr. Ali testified you had to |
| 9:55AM | 5 | look at this before going into the websites, it is absolutely a |
| 9:55AM | 6 | reasonable inference for you to draw that every single person |
| 9:55AM | 7 | on these websites, including those who managed it, saw this |
| 9:55AM | 8 | disclaimer. |
| 9:55AM | 9 | And I want to point some things -- point out |
| 9:55AM | 10 | some things to you suggesting that whoever wrote this |
| 9:55AM | 11 | disclaimer did not believe it. |
| 9:55AM | 12 | First of all, it says it's a hundred percent not |
| 9:55AM | 13 | child porn.  I think the average person and possibly the |
| 9:55AM | 14 | non-average person has never in their lives encountered a |
| 9:55AM | 15 | consumer product that had to say, "This isn't child porn." |
| 9:56AM | 16 | They don't put that on children's underwear magazines.  They |
| 9:56AM | 17 | don't put it anywhere.  If you ever encounter something that |
| 9:56AM | 18 | says, "This is not child porn," that might be a signal that |
| 9:56AM | 19 | it's probably child pornography. |
| 9:56AM | 20 | But also if you look at this legal disclaimer, |
| 9:56AM | 21 | you'll see it has a line, "This is a website that contains no |
| 9:56AM | 22 | sexual or erotic poses."  You've seen what's inside.  That's a |
| 9:56AM | 23 | lie.  That's just an absolute lie.  Of course, there are sexual |
| 9:56AM | 24 | and erotic poses on the inside. |
| 9:56AM | 25 | One other thing about this is Mr. Ali testified |

9:56AM  1   you have to look at this disclaimer before you enter the

9:56AM  2   website.  You have to hit continue, or you will not go into the

9:56AM  3   website, and if you look at the bottom line, it says, "Use the

9:56AM  4   buttons below to enter if you agree to the above."  There are

9:56AM  5   no pictures of children on here.  How can you possibly agree

9:57AM  6   that there's no sexual or erotic poses, there's no child

9:57AM  7   pornography, they were not designed for pedophiles?  How could

9:57AM  8   a customer possibly agree to any of that while they're on this

9:57AM  9   page that contains no images before they go to the websites?

9:57AM  10  They can't.  This was designed for the website owners to cover

9:57AM  11  their back sides in case a customer complained.

9:57AM  12          And the final thing about this is we've

9:57AM  13  presented this disclaimer to you, but we've also presented two

9:57AM  14  disclaimers.  There's this one that is absolutely confident and

9:57AM  15  categorical.  "This is 100 percent legal."  And then there's

9:57AM  16  this other one on the credit card page that says, "While

9:57AM  17  non-nude and legal, some countries have begun to challenge your

9:57AM  18  right to view non-nude websites."  That's just another way of

9:57AM  19  saying that it's illegal.  If I told you that City of Tampa had

9:57AM  20  begun to challenge your right to drive a hundred miles an hour

9:57AM  21  on the street in front of the courthouse, that would be me

9:57AM  22  telling you that that's illegal, and that's what this means.

9:58AM  23          And it goes on to say, "By joining, you certify

9:58AM  24  that you are 18 years old and you're aware of laws in your

9:58AM  25  country or state, and that viewing non-nude child modeling is

9:58AM 1    legal from your location."

9:58AM 2            So here we go.  When they're trying to get

9:58AM 3    people into the website, they could not be clearer.  "This is

9:58AM 4    100 percent legal.  This is 100 percent not child porn."  And

9:58AM 5    when a customer has his credit card out, little bitty font at

9:58AM 6    the bottom says, "Hey, you know what?  This might not actually

9:58AM 7    be legal, and if it's not, you're on your own, Buddy."  That's

9:58AM 8    what this says.  The person who wrote this did not believe it.

9:58AM 9            Ladies and gentlemen, we've proven beyond a

9:58AM 10   reasonable doubt that the images and videos on the Newstar

9:58AM 11   websites show the lascivious exhibition of minors' genitals and

9:58AM 12   pubic areas.

9:58AM 13           There was also a conspiracy to advertise and

9:58AM 14   distribute those images or videos.  I want to explain what that

9:59AM 15   means.  A conspiracy is a fancy word for agreement.  We have to

9:59AM 16   prove that two or more persons in some way agreed to try to

9:59AM 17   accomplish a shared and unlawful plan, and that Mr. Velinov

9:59AM 18   knew the purpose of the plan and knowingly and voluntarily

9:59AM 19   joined in it, and the unlawful purpose was to advertise these

9:59AM 20   images, which requires the Government to prove the following:

9:59AM 21   Number 1, an individual knowingly made, printed, or published

9:59AM 22   or caused to be made, printed, or published, a notice or

9:59AM 23   advertisement offering; number 2, to display, distribute, or

9:59AM 24   reproduce any visual depiction involving the use of a minor

9:59AM 25   engaged in sexually explicit conduct, and the visual depictions

9:59AM 1  of such conduct.  The Government has to prove both of those,

9:59AM 2  and one of these.  I'm not going to read them to you.  They

9:59AM 3  have to do with interstate and foreign commerce.  I'm going to

9:59AM 4  explain why I'm not reading it to you in a second.  That's

9:59AM 5  advertisement of illegal images.

10:00AM 6          Let's talk about distribution of illegal images.

10:00AM 7  And to be clear, we don't have to prove that Mr. Velinov did

10:00AM 8  this.  We only have to prove that he conspired with other

10:00AM 9  people to do this.

10:00AM 10         The elements of distributing these images are

10:00AM 11 that:  Number 1, the individual knowingly distributed visual

10:00AM 12 depiction; number 2, interstate and foreign commerce.  We'll

10:00AM 13 talk about that in a second; number 3, producing the visual

10:00AM 14 depiction involved using a minor engaged in sexually explicit

10:00AM 15 conduct.  There is that phrase again, sexually explicit

10:00AM 16 conduct, that includes lascivious exhibition of the genitals or

10:00AM 17 pubic area; number 4, the depiction is of a minor engaged in

10:00AM 18 sexually explicit conduct; and number 5, the individual knew

10:00AM 19 that at least one performer individual in the picture was a

10:00AM 20 minor and knew that the depiction showed the minor engaged in

10:00AM 21 sexually explicit conduct.

10:00AM 22         Interstate and foreign commerce.  Take a look at

10:00AM 23 Government Exhibit 9, which is the third stipulation of the

10:00AM 24 parties.  The parties have stipulated that the internet is a

10:01AM 25 means and facility of interstate and foreign commerce.

| | | |
|---|---|---|
| 10:01AM | 1 | Specified websites had content, text, images, advertisements, |
| 10:01AM | 2 | text, images, and videos that were transported over the |
| 10:01AM | 3 | internet in and affecting interstate and foreign commerce.  We |
| 10:01AM | 4 | submit to you that the third stipulation of the parties fully |
| 10:01AM | 5 | satisfies the interstate commerce requirements. |
| 10:01AM | 6 | We also have to show that Mr. Velinov knew |
| 10:01AM | 7 | certain things or that he did certain things knowingly.  He |
| 10:01AM | 8 | knew the purpose of the conspiracy and knowingly and |
| 10:01AM | 9 | voluntarily joined into it.  An individual knowingly made, |
| 10:01AM | 10 | printed, or published an advertisement.  The individual |
| 10:01AM | 11 | knowingly distributed a visual depiction. |
| 10:01AM | 12 | Something done knowingly means that it was done |
| 10:01AM | 13 | voluntarily and intentionally and not because of mistake or |
| 10:01AM | 14 | accident.  The Government has proved that he knew what he was |
| 10:01AM | 15 | doing.  The Government does not need to prove that he or anyone |
| 10:01AM | 16 | else knew or thought these were illegal; just that he knew what |
| 10:02AM | 17 | he was doing. |
| 10:02AM | 18 | And we submit to you, ladies and gentlemen, that |
| 10:02AM | 19 | the Government has plainly proven that there was a conspiracy |
| 10:02AM | 20 | behind the Newstar websites.  Here are some of the |
| 10:02AM | 21 | co-conspirators.  I'm going to get to Mr. Velinov in a second, |
| 10:02AM | 22 | but the co-conspirators included Mr. Power; Ms. Power, who you |
| 10:02AM | 23 | heard from; Anton Klenin; Mark Bjorkman; and others.  They |
| 10:02AM | 24 | conspired to run these websites that advertised and distributed |
| 10:02AM | 25 | these illegal images. |

| | | |
|---|---|---|
| 10:02AM | 1 | How do these websites distribute the images? |
| 10:02AM | 2 | This one is easy.  Mr. Ali testified that this little zip |
| 10:02AM | 3 | function in the lower right corner allowed a customer to |
| 10:02AM | 4 | download -- they could view the image on the screen, but they |
| 10:02AM | 5 | could download it on to their computers.  Tiny Model News, |
| 10:02AM | 6 | which we discussed, says there was a 6 gig of downloads per |
| 10:02AM | 7 | day.  You can't be on these websites -- you know the customers |
| 10:02AM | 8 | are downloading.  They're encouraging it. |
| 10:02AM | 9 | Mr. Ali also testified about this products data |
| 10:03AM | 10 | from ClipMonster.  Purchase items from ClipMonster.  You can |
| 10:03AM | 11 | download them on your computer.  So they used our websites to |
| 10:03AM | 12 | distribute these images, but they also advertised them, and |
| 10:03AM | 13 | they did it in specific ways. |
| 10:03AM | 14 | Preview photos.  Mr. Ali walked you through the |
| 10:03AM | 15 | structure of the websites in some detail.  There were preview |
| 10:03AM | 16 | photos outside the paywall.  This were preview photos inside |
| 10:03AM | 17 | the paywall.  ClipMonster had preview photos.  There were also |
| 10:03AM | 18 | advertising banners.  The Government submits to you that each |
| 10:03AM | 19 | of these are a notice or advertisement offering to distribute, |
| 10:03AM | 20 | display, or reproduce illegal sexual images of children. |
| 10:03AM | 21 | The preview photos themselves are very |
| 10:03AM | 22 | frequently sexually explicit conduct, because they depict young |
| 10:03AM | 23 | girls lasciviously exhibiting their genitalia or pubic area |
| 10:03AM | 24 | that are barely clothed.  This is Government Exhibit 343. |
| 10:03AM | 25 | These are all highly sexual images that serve as preview |

| | | |
|---|---|---|
| 10:04AM | 1 | photos, both inside and outside the paywall. |
| 10:04AM | 2 | Now, Mr. Ali testified that the point of the |
| 10:04AM | 3 | previews outside the paywall were essentially to bring |
| 10:04AM | 4 | customers into the website.  You would see these images.  For |
| 10:04AM | 5 | example, take a look at gallery 130 of Sweet ███████  She's |
| 10:04AM | 6 | spreading her legs for the camera.  Customer clicks on that |
| 10:04AM | 7 | image, does so because he clearly understands that the point of |
| 10:04AM | 8 | this image is to suggest to customers there is more content |
| 10:04AM | 9 | like this behind these preview photos.  A customer clicks on |
| 10:04AM | 10 | this, and it says, "Join by credit card.  Give me your credit |
| 10:04AM | 11 | card."  Once a customer pays to get inside the website, there |
| 10:04AM | 12 | are previews inside the paywall that serve the same function. |
| 10:04AM | 13 | For example, take a look at gallery 330 and Sweet ███████ |
| 10:04AM | 14 | Bra, panties, some kind of weird cat ears.  She's spreading her |
| 10:04AM | 15 | legs and looking into the camera.  The clear signal this is |
| 10:05AM | 16 | sending, there is more content like this inside this gallery if |
| 10:05AM | 17 | you click.  That's exactly what happened.  You click on this, |
| 10:05AM | 18 | you go inside the paywall, they get to see the galleries. |
| 10:05AM | 19 | These are notices and advertisements offering to distribute, |
| 10:05AM | 20 | display, and reproduce illegal sexual images of the children. |
| 10:05AM | 21 | ClipMonster had the same thing.  This is |
| 10:05AM | 22 | Government Exhibit 351.  ClipMonster advertised the videos |
| 10:05AM | 23 | through preview photos.  A customer could look at this and say, |
| 10:05AM | 24 | "I want that video.  I want more of this."  Then they make |
| 10:05AM | 25 | their purchase.  Same functions, notices, and advertisements. |

|          |    |                                                                       |
|----------|----|-----------------------------------------------------------------------|
| 10:05AM  | 1  | Advertising banners.  Again, Mr. Ali testified                        |
| 10:05AM  | 2  | that these advertising banners were on every single Newstar           |
| 10:05AM  | 3  | website providing people links where they could go to the other       |
| 10:05AM  | 4  | Newstar websites, and some of the advertising banners -- not          |
| 10:05AM  | 5  | all, but some of them clearly showed the minors' pubic area.          |
| 10:05AM  | 6  | They're clearly sexual.  They clearly signal what can be found        |
| 10:06AM  | 7  | if you click on this image and you're redirected to Sweet             |
| 10:06AM  | 8  | ███████      Again, notices and advertisements.                       |
| 10:06AM  | 9  | We also talked to you about Tiny Model News.                          |
| 10:06AM  | 10 | Tiny Model News may not have had a great deal of illegal sexual       |
| 10:06AM  | 11 | content on it, but it clearly signals to customers that there         |
| 10:06AM  | 12 | are sexual images of children.  For example, Newstar ████ the         |
| 10:06AM  | 13 | description is, "Come taste the Lola's photo pieces."  Taste?         |
| 10:06AM  | 14 | Come taste images of children?  These are dog whistle phrases         |
| 10:06AM  | 15 | signaling to people that what is inside these websites is             |
| 10:06AM  | 16 | highly sexual.                                                        |
| 10:06AM  | 17 | Mr. Velinov and Mr. Power and others also                            |
| 10:06AM  | 18 | discussed advertising.  They admitted that that's what they          |
| 10:06AM  | 19 | were doing.  Remember, this is from the ICQ chats.  Mr. Power's      |
| 10:06AM  | 20 | in red.  Mr. Velinov's in black.  "We need advertisement, but        |
| 10:06AM  | 21 | we also need a way for people to actually be able to join."          |
| 10:07AM  | 22 | Further down from the Skype chats that Mr. Tucker testified          |
| 10:07AM  | 23 | about, Mr. Power says, "We have the strongest advertising --"        |
| 10:07AM  | 24 | **COURTROOM DEPUTY:**  Counsel, you have five minutes.               |
| 10:07AM  | 25 | **MR. REYNOLDS:**  Thank you.  "We have the strongest               |

10:07AM  1   advertising of any child model sites that don't take

10:07AM  2   affiliates," and Mr. Velinov responds at the bottom, "This we

10:07AM  3   know very well.  The point was that only risky advertisement

10:07AM  4   can get us more sales."

10:07AM  5              They also talk about the preview photos in black

10:07AM  6   here.  Mr. Velinov is talking about preview photos.  Mr. Power

10:07AM  7   replies, "Well, I always try to put the best photo, and I think

10:07AM  8   of all people's fetish; the ones that like feet, the one that

10:07AM  9   likes stockings.  I try make photos to catch everyone."  Look

10:07AM  10  at the language they're using.  Fetish.  Fetish is sexual.

10:07AM  11  Someone who likes hamburgers -- somebody who likes to eat

10:07AM  12  hamburgers doesn't have a hamburger fetish.  Fetish is sexual,

10:07AM  13  and here we have Mr. Power and Mr. Velinov in a discussion in

10:07AM  14  which Mr. Power admits he is putting sexual images on the

10:08AM  15  preview photos in order to -- in order to appeal to people's

10:08AM  16  sexual interests so they will come in to the websites.  The

10:08AM  17  advertisement conspiracy was meant to drive traffic into the

10:08AM  18  websites so people will pay to view its content.

10:08AM  19             The Government has proven beyond a reasonable

10:08AM  20  doubt that there was a conspiracy to advertise and distribute

10:08AM  21  the images and the videos on the Newstar websites, including

10:08AM  22  ClipMonster.

10:08AM  23             Now I want to talk about the Defendant.  The

10:08AM  24  Defendant was part of that conspiracy, and he knew full well

10:08AM  25  what those images and those videos depicted.

10:08AM   1          I want to talk a little bit about identity.  I'm
10:08AM   2   going to go through this kind of fast because I'm not sure
10:08AM   3   identity is really meaningfully being contested.  Mr. Kerr will
10:08AM   4   let us know.  But anyway, it's on his resumé.  He has Power
10:08AM   5   Trading on his resumé.  Power Trading is the business run by
10:08AM   6   Ken and Tatiana Power through which all the money from the
10:08AM   7   Newstar websites flowed through their bank accounts over to
10:08AM   8   Mr. Velinov.  He also admits that he's using email addresses
10:09AM   9   that he uses to transact business related to the Newstar
10:09AM  10   websites.
10:09AM  11          Investigator Angelov identified Mr. Velinov in
10:09AM  12   the court, and said, "I've been in his house.  I watched him
10:09AM  13   turn the key in this house.  I seized this computer."
10:09AM  14   Mr. Gaertner told you what was on it, evidence related to the
10:09AM  15   Newstar websites from the Defendant's own home.
10:09AM  16          His bank accounts.  He opened his bank account
10:09AM  17   in 2006 with his unique Bulgarian ID that Investigator Angelov
10:09AM  18   told you is assigned only to one person in the entire nation of
10:09AM  19   Bulgaria.  He opened this account in 2006.  That account was on
10:09AM  20   a document on Ken Power's computer entitled "Banks For Paying
10:09AM  21   People."  We also showed you that Mr. Velinov closed this
10:09AM  22   account on November 11th, 2019, and the significance of that
10:09AM  23   date is that was four days after the Dutch National Police
10:09AM  24   seized the Newstar servers and took them down, four days after
10:10AM  25   HSI agents executed search warrants at the Bjorkman home in

<table>
<tr><td>10:10AM</td><td>1</td><td>Lutz and the Power home in Weston.  This bank account was open</td></tr>
</table>

10:10AM  1   Lutz and the Power home in Weston.  This bank account was open

10:10AM  2   for 13 years.  Four days after the websites go down, he closes

10:10AM  3   it.  Why?  He didn't need it anymore.  It was only for him to

10:10AM  4   receive money from the Newstar websites.

10:10AM  5              Special Agent Garcia also testified there were

10:10AM  6   ICQ chats in which Ken Power says that he sent money to

10:10AM  7   Mr. Velinov.  Those wire transfers are reflected in the wire

10:10AM  8   transfer financial records.

10:10AM  9              And lastly, we focus a little bit on IP

10:10AM  10  addresses.  He says in an email that he uses these two IP

10:10AM  11  addresses.  These are the same two IP addresses in the ICQ

10:10AM  12  chats, in the configuration files, in the web access log that

10:10AM  13  Mr. Ali testified about it.  It's all the same guy.

10:10AM  14             So what did he do on the websites?  It was him.

10:11AM  15  He was involved.  What did he do?  Well, he activated new

10:11AM  16  sites. "Hi, Mark.  Hello, Mark.  Would you please activate our

10:11AM  17  new site, Newstar-██████.com?  Best regards, Plamen."  He

10:11AM  18  created advertising banners.  He says right here.  If you

10:11AM  19  recall, Mr. Velinov is in black. "I made that banner today."

10:11AM  20  Mr. Power says, "I like the banner, but they always flash too

10:11AM  21  fast."  And Mr. Velinov says, "Well, I can make it flash

10:11AM  22  slower."

10:11AM  23             He edited the preview photos.  Here we have --

10:11AM  24  he's saying, "Do you want me to change the first preview

10:11AM  25  photos, the ones that are looking the same?"  And then down

| | |
|---|---|
| 10:11AM | 1 |
| 10:11AM | 2 |
| 10:11AM | 3 |
| 10:11AM | 4 |
| 10:11AM | 5 |
| 10:11AM | 6 |
| 10:11AM | 7 |
| 10:12AM | 8 |
| 10:12AM | 9 |
| 10:12AM | 10 |
| 10:12AM | 11 |
| 10:12AM | 12 |
| 10:12AM | 13 |
| 10:12AM | 14 |
| 10:12AM | 15 |
| 10:12AM | 16 |
| 10:12AM | 17 |
| 10:12AM | 18 |
| 10:12AM | 19 |
| 10:12AM | 20 |
| 10:12AM | 21 |
| 10:12AM | 22 |
| 10:12AM | 23 |
| 10:13AM | 24 |
| 10:13AM | 25 |

1  below he says, "Six out of the preview photos looking exactly
2  the same.  This is nightmare."  Mr. Power says, "Well, if you
3  want to try to fix it, do."  Why is it a nightmare?  Because
4  it's not doing the job that the preview photos are doing, which
5  is trying to appeal to different people fetishes, which is
6  exactly what Mr. Power admitted he was trying to do.
7           He helped pick children to be on the websites.
8  Recall that Mr. Tucker testified about a cascading folder on
9  Mr. Power's computer that included certain names.  ██████
10 ██████████████████████████████████.  In the ICQ chats, we
11 can clearly see Mr. Velinov and Mr. Power going through those
12 chats and picking who they like and don't like.  Mr. Velinov's
13 own words, "████ is ugly.  ████ is good."  Down below.
14 "████ is also good, but I think that the new ████ would pose
15 better from her from what I see from those cascades."
16           He set prices for videos.  He told Mark Bjorkman
17 to change the price of videos on ClipMonster, typically because
18 these videos were popular.  He was trying to root out people
19 who were paying for subscriptions and downloading content and
20 then asking for refunds.  He's looking out for the financial
21 integrity of the websites.  He's making sure that they're
22 making the money they're entitled to.
23           He communicated with customers.  That's on his
24 resumé.  Customer -- job.  Customer support in English.  In
25 English.  He knows Mark Bjorkman to say, "Hi, I just got an

| | | |
|---|---|---|
| 10:13AM | 1 | email from a customer saying that ClipMonster is down." He |
| 10:13AM | 2 | made sure there was enough space for the videos at ClipMonster, |
| 10:13AM | 3 | and there's a remarkable line in here, and I would point it out |
| 10:13AM | 4 | to you. He says, "Let's get a one terabyte drive. Such drive |
| 10:13AM | 5 | should add enough space for the next five years." Mr. Velinov |
| 10:13AM | 6 | is playing the long game. He wants these websites to keep |
| 10:13AM | 7 | going. This was sent less than five years ago. If the United |
| 10:13AM | 8 | States Government, the Dutch Government hadn't taken these |
| 10:13AM | 9 | sites down, this drive that he's talking about would still be |
| 10:13AM | 10 | hosting this content today. |
| 10:13AM | 11 | He knew what these images depicted, exactly what |
| 10:13AM | 12 | I said at the beginning. Nuclear sexy. That skirt is ugly and |
| 10:13AM | 13 | shows nothing. This other one shows some panties. He knows |
| 10:13AM | 14 | that this material is sexual. He knows that it depicts the |
| 10:14AM | 15 | lascivious exhibition of children's genitals. |
| 10:14AM | 16 | Special Agent Garcia walked you through |
| 10:14AM | 17 | different emails in which he's asking Mark Bjorkman, "Please |
| 10:14AM | 18 | change the price for this video. Here's the product ID," and |
| 10:14AM | 19 | then using the products table that Mr. Ali pulled out of the |
| 10:14AM | 20 | ClipMonster server, she showed you the video. Here's this girl |
| 10:14AM | 21 | in these pink pants. She's wearing this mesh body suit. You |
| 10:14AM | 22 | can see her nipples. |
| 10:14AM | 23 | Here's another example. In the ICQ chats |
| 10:14AM | 24 | Mr. Velinov refers to certain videos and says, "As you can see, |
| 10:14AM | 25 | the ▮▮▮▮ video got the same sales as ▮▮▮▮▮▮ so clearly |

| | | |
|---|---|---|
| 10:14AM | 1 | that video shows what the customer wants."  And through |
| 10:14AM | 2 | Mr. Tucker, we show you the content of these videos.  What do |
| 10:14AM | 3 | they depict?  They depict young children spreading their legs |
| 10:14AM | 4 | for the camera, showing their underwear.  This is what the |
| 10:14AM | 5 | customers want.  This is what Mr. Velinov provided to them. |
| 10:14AM | 6 | You saw this video through Special Agent Garcia. |
| 10:15AM | 7 | "Hi, can you please urgently change the price for that video to |
| 10:15AM | 8 | 49.95?"  And it depicts young girls wearing bizarre lingerie, |
| 10:15AM | 9 | bending over, spreading their legs.  And you recall this video |
| 10:15AM | 10 | too, specifically referred to in an email from Mr. Velinov. |
| 10:15AM | 11 | This video, this girl -- again, pants have been pulled back to |
| 10:15AM | 12 | expose her genital area.  She is, for some reason no one can |
| 10:15AM | 13 | possibly comprehend, wearing high heels and underwear in a |
| 10:15AM | 14 | bathroom.  She's rubbing lotion on herself.  She puts her high |
| 10:15AM | 15 | heel up on the counter in order to further expose her genital |
| 10:15AM | 16 | area. |
| 10:15AM | 17 | He and Mr. Power looked at these girls as |
| 10:15AM | 18 | objects to make money.  Here they are.  Their own words, |
| 10:15AM | 19 | they're talking about that.  "█████ has a mustache." |
| 10:15AM | 20 | Mr. Power says, "We'll get her a can of Nair.  There are also a |
| 10:15AM | 21 | lot of pretty ones that I can tell will get fat."  Mr. Velinov |
| 10:16AM | 22 | says, "It's easy to see, as they are even fat even now."  They |
| 10:16AM | 23 | are not concerned about the welfare of these children.  They're |
| 10:16AM | 24 | only concerned about the appearance of their bodies and their |
| 10:16AM | 25 | sex appeal because that is the product they are pedaling to |

| | | |
|---|---|---|
| 10:16AM | 1 | their customers. |
| 10:16AM | 2 | What was his motive?  What was everyone's motive |
| 10:16AM | 3 | in this conspiracy?  Mr. Power put it right here in the Skype |
| 10:16AM | 4 | chat.  "What we need to do is maximize profit," and maximize |
| 10:16AM | 5 | profit they did.  You have seen testimony that millions of |
| 10:16AM | 6 | dollars flowed through this website, through the website owners |
| 10:16AM | 7 | and managers.  And anyway you slice it, hundreds of thousands |
| 10:16AM | 8 | of dollars went into Mr. Velinov's account at his account at |
| 10:16AM | 9 | the Dessica Bank in Bulgaria.  That was his bank. |
| 10:16AM | 10 | Ladies and gentlemen, the Government has proven |
| 10:16AM | 11 | all of these points beyond a reasonable doubt.  Images and |
| 10:16AM | 12 | videos on the Newstar websites show the lascivious exhibition |
| 10:16AM | 13 | of minors' genitals and pubic areas.  There was a conspiracy to |
| 10:17AM | 14 | advertise and distribute those images and videos through the |
| 10:17AM | 15 | Newstar websites.  The Defendant was part of that conspiracy. |
| 10:17AM | 16 | He knew the nature and the content of the images and videos. |
| 10:17AM | 17 | The Government has proven this beyond a reasonable doubt. |
| 10:17AM | 18 | There's only one verdict that is consistent with the evidence |
| 10:17AM | 19 | you've seen, and that's a verdict of guilty on both counts of |
| 10:17AM | 20 | the Indictment.  Thank you. |
| 10:17AM | 21 | THE COURT:  All right.  Thank you, Mr. Reynolds. |
| 10:17AM | 22 | All right.  Mr. -- is the jury okay with |
| 10:17AM | 23 | Mr. Kerr making his presentation?  Does anybody need to take a |
| 10:17AM | 24 | break?  You need take a break?  All right.  Ladies and |
| 10:17AM | 25 | gentlemen, we're going to go ahead and take a 10-minute break. |

| | | |
|---|---|---|
| 10:17AM | 1 | Don't discuss the case yet, because your deliberations are not |
| 10:17AM | 2 | yet to begin.  10 minutes. |
| | 3 | (Jury out at 10:18 a.m.) |
| 10:18AM | 4 | THE COURT:  Thank you.  So 10-minute break.  I'm not |
| 10:18AM | 5 | certain how long -- Magaly, how long did he take? |
| 10:18AM | 6 | COURTROOM DEPUTY:  He has 14 minutes left, Your |
| 10:18AM | 7 | Honor. |
| 10:18AM | 8 | THE COURT:  You have 14 minutes left. |
| 10:18AM | 9 | MR. REYNOLDS:  Thank you. |
| 10:18AM | 10 | THE COURT:  Okay.  All right.  So we're in recess. |
| | 11 | (Recess from 10:18 a.m. to 10:27 a.m.) |
| 10:27AM | 12 | THE COURT:  All right.  Everybody ready?  We'll bring |
| 10:27AM | 13 | the jury in.  Thank you. |
| | 14 | (Jury in at 10:28 a.m.) |
| 10:28AM | 15 | THE COURT:  All right.  Welcome back, ladies and |
| 10:28AM | 16 | gentlemen.  All right.  Everybody can please be seated. |
| 10:28AM | 17 | The Government has given its opening -- or its |
| 10:28AM | 18 | opening -- closing argument, and now it's the opportunity for |
| 10:28AM | 19 | the defense to give its closing argument.  As I said earlier, |
| 10:28AM | 20 | ladies and gentlemen, the defense only has one chance, so one |
| 10:28AM | 21 | opportunity to address you, whereas the Government, because |
| 10:28AM | 22 | they have the burden of proof, has the opportunity to give a |
| 10:28AM | 23 | rebuttal closing argument.  I think we said earlier he has |
| 10:28AM | 24 | about how long, 14 or 15 minutes, something like that; is that |
| 10:29AM | 25 | right, Magaly? |

10:29AM 1    **COURTROOM DEPUTY:**  For the Government, yes, Your

10:29AM 2  Honor.

10:29AM 3    **THE COURT:**  14 minutes.  Okay.  So, Mr. Kerr, you

10:29AM 4  have up to an hour.  I think you said earlier you didn't think

10:29AM 5  you'd take that long, but if you do, we'll let you know when

10:29AM 6  you have five minutes left, okay?  Thank you.

10:29AM 7    **MR. KERR:**  Thank you, Your Honor.

10:29AM 8    The Government said that they would prove their

10:29AM 9  case, and they assured you that they would, but they haven't

10:29AM 10  met that standard.  They have not met their burden.

10:29AM 11    The images that you've seen are not child

10:29AM 12  pornography, and you have a sworn duty because of that to find

10:29AM 13  Mr. Velinov not guilty.

10:29AM 14    Don't let the Government tell you what to see,

10:29AM 15  what you're seeing or what you're not seeing.  Your eyes and

10:29AM 16  your vision are sufficient for this.

10:29AM 17    Don't let the fact that they handled this

10:29AM 18  material like it was a nuclear codes fool you either.  Trust

10:30AM 19  your own eyes and your own vision when you see no nudity, no

10:30AM 20  sexually explicit conduct, and no minors having sex.

10:30AM 21    That's the evidence and lack of evidence, but

10:30AM 22  what about the conflicting evidence?  Start with the fact that

10:30AM 23  the last witness that testified, Special Agent Tavey Garcia,

10:30AM 24  testified that this website, Newstar, was up on the public

10:30AM 25  internet, the clear web they call it, starting in 2005

| | | |
|---|---|---|
| 10:30AM | 1 | accessible to anyone.  Ten years later, FBI Special Agent |
| 10:30AM | 2 | Allison Boos testified -- she was the first witness -- that she |
| 10:30AM | 3 | used a credit card of the Department of Justice to access this |
| 10:30AM | 4 | website and purchase a membership.  She viewed all of this |
| 10:31AM | 5 | material.  She said that was in September 2015.  Then she gave |
| 10:31AM | 6 | some very important testimony.  Starting about two years later, |
| 10:31AM | 7 | she started submitting status reports to her bosses, and there |
| 10:31AM | 8 | was a federal prosecutor identified.  On the witness stand, she |
| 10:31AM | 9 | looked through those reports, and she verified that those were |
| 10:31AM | 10 | her reports, and that's exactly what she wrote.  And here's the |
| 10:31AM | 11 | key part.  If any of you are note takers, this is probably |
| 10:31AM | 12 | worth writing down.  She reported that the Newstar -- that |
| 10:31AM | 13 | Newstar was running quote "commercial child erotica websites", |
| 10:31AM | 14 | close quote.  As you heard from Mr. Reynolds, that term means |
| 10:31AM | 15 | something.  It means legal pictures of children.  Creepy, but |
| 10:31AM | 16 | legal. |
| 10:31AM | 17 | Over the next two years she submitted reports |
| 10:32AM | 18 | saying that exact same thing.  So from 2017 until she said |
| 10:32AM | 19 | approximately 2019, some 29 times she referred to Newstar as |
| 10:32AM | 20 | commercial child erotica websites. |
| 10:32AM | 21 | Now, why is this important?  As Mr. Reynolds |
| 10:32AM | 22 | indicated, the judge's instructions are going to tell you what |
| 10:32AM | 23 | is meant by the term child erotica that this agent used.  She |
| 10:32AM | 24 | saw all this material or the relevant material in September of |
| 10:32AM | 25 | 2015, and it was over the next four and a half years she |

| | |
|---|---|
| 10:32AM | 1 |
| 10:32AM | 2 |
| 10:32AM | 3 |
| 10:32AM | 4 |
| 10:32AM | 5 |
| 10:33AM | 6 |
| 10:33AM | 7 |
| 10:33AM | 8 |
| 10:33AM | 9 |
| 10:33AM | 10 |
| 10:33AM | 11 |
| 10:33AM | 12 |
| 10:33AM | 13 |
| 10:33AM | 14 |
| 10:33AM | 15 |
| 10:33AM | 16 |
| 10:33AM | 17 |
| 10:33AM | 18 |
| 10:34AM | 19 |
| 10:34AM | 20 |
| 10:34AM | 21 |
| 10:34AM | 22 |
| 10:34AM | 23 |
| 10:34AM | 24 |
| 10:34AM | 25 |

submitted reports for two of those years calling it legal material.

So the -- it's worth wondering, by the way, how some computer guy over in Bulgaria is supposed to recognize that this is definitely illegal material when an FBI agent who's assigned to the Child Exploitation Unit at the Department of Justice calls it legal material. She doesn't recognize it as illegal, so I'm not sure how a guy in Bulgaria is supposed to see this. If you knew nothing else, if we knew nothing else, that should provide enough reasonable doubt right there as to Mr. Velinov's guilt.

But there's more evidence, lack of evidence, and conflicts in the evidence to consider.

As I mentioned at the beginning when we first met, even after this purchase in September 2015 by SA Boos, Special Agent Boos, the Government took more than four years to shut this down. So they let it run for 2016, 2017, all of 2018, to the end of 2019. Every year, every month, every day of that that that website was left up should provide you with another reasonable doubt. If they really believed that this was child pornography and that children were being abused, why was that? Why did they let it go for that length of time?

You heard -- did you ever hear explanations beyond a few offhand comments for a witness -- I can't even recall myself which witness it was. It may have been Special

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 10:34AM  | 1  | Agent Boos, said, "Well, it's really hard to do this."  That's |
| 10:34AM  | 2  | it.  And so what about the 29 times two years after signing on |
| 10:34AM  | 3  | to Newstar the first time starting in 2017 that she called this |
| 10:34AM  | 4  | material commercial child erotica or legal pictures?  In       |
| 10:34AM  | 5  | July 2017 that was her reasonable doubt and should be yours.   |
| 10:34AM  | 6  | The second time she wrote it, she had more --                 |
| 10:34AM  | 7  | that's more reasonable doubt and more reasonable doubt for you. |
| 10:35AM  | 8  | The third, fourth, fifth, through the 29th time she wrote that, |
| 10:35AM  | 9  | more reasonable doubts.                                        |
| 10:35AM  | 10 | Special Agent Garcia testified that they locate               |
| 10:35AM  | 11 | the some of these models, if you recall, and interviewed them |
| 10:35AM  | 12 | as adults.  They were already adults by the time they          |
| 10:35AM  | 13 | interviewed them.  And don't you think that if they -- if one |
| 10:35AM  | 14 | of those witnesses, one or two of those witnesses would have  |
| 10:35AM  | 15 | helped their case, they would have been here testifying in this |
| 10:35AM  | 16 | trial?  That's more lack of evidence.                         |
| 10:35AM  | 17 | But back to the evidence and the lack of                      |
| 10:35AM  | 18 | evidence and the conflicts in the evidence that you saw        |
| 10:35AM  | 19 | throughout this trial, all the irrelevant, extraneous,        |
| 10:35AM  | 20 | unrelated evidence the Government brought in to try to bolster |
| 10:35AM  | 21 | their weak case, to distract from the evidence that matters.  |
| 10:35AM  | 22 | Tatiana Power never met or spoke with                         |
| 10:35AM  | 23 | Mr. Velinov, facing life in prison or a hundred years for money |
| 10:36AM  | 24 | laundering.  A few months ago the Government was telling a     |
| 10:36AM  | 25 | court that she obstructed justice, that she repeatedly lied to |

10:36AM  1    them and obstructed their investigation.  She lied to a judge

10:36AM  2    to try to get out of jail.  What was that about?  What

10:36AM  3    relevance did she have?

10:36AM  4              Mr. Velinov's resumé.  Irrelevant.  They

10:36AM  5    highlighted -- it looked like a normal computer guy's resumé.

10:36AM  6    They highlighted one pink website on there that -- tried to

10:36AM  7    make it look like something, but did they ever show that it

10:36AM  8    meant anything?

10:36AM  9              The testimony about the -- excuse me.  I get

10:36AM  10   thirsty a lot.  The testimony about the proxy servers, those

10:36AM  11   are used all over the world in all kinds of things.  I don't

10:36AM  12   know what it stands for, but the VPN internet security that you

10:36AM  13   have uses proxy servers.  The clean websites use that, their

10:36AM  14   expert testified, to balance the load, and there are all kinds

10:36AM  15   of legitimate reasons for those.  It's not the dark web where

10:37AM  16   this bad stuff is.

10:37AM  17             The computers the Government could not get into

10:37AM  18   that they seized, they brought back from Bulgaria.  Irrelevant.

10:37AM  19   Oh, I mean, the implication was, "Oh, this was where the really

10:37AM  20   bad stuff must be," you know, not this is the really bad stuff.

10:37AM  21   Well, you heard the witness, their witness.  They never even

10:37AM  22   asked to get into that.

10:37AM  23             You heard the Bulgarian investigator,

10:37AM  24   Mr. Angelov, admit reluctantly, it seemed to me, that

10:37AM  25   Mr. Velinov had never been on their radar, had no criminal

| | | |
|---|---|---|
| 10:37AM | 1 | record at age 49 years old.  He was -- Mr. Velinov was a |
| 10:37AM | 2 | hundred percent cooperative.  They called him up and asked him |
| 10:37AM | 3 | to come in.  He came in and talked to them for two hours |
| 10:37AM | 4 | without a lawyer, answered all their questions, gave them |
| 10:38AM | 5 | consent to search his bank account, opened the door to his |
| 10:38AM | 6 | apartment.  He certainly didn't act like somebody who thought |
| 10:38AM | 7 | he was guilty of something. |
| 10:38AM | 8 | Mr. Velinov had a bank account in his -- his own |
| 10:38AM | 9 | name and was transacting business in his own name, okay? |
| 10:38AM | 10 | That's also irrelevant.  He had nothing to do, the testimony |
| 10:38AM | 11 | was, with the money launderers, Tatiana's Powers and these |
| 10:38AM | 12 | other people over here that he never met, never laid eyes on, |
| 10:38AM | 13 | never set foot here.  His bank account was in his own name. |
| 10:38AM | 14 | Nothing was hidden.  The -- don't be distracted by all of that. |
| 10:38AM | 15 | It's all smoke. |
| 10:38AM | 16 | These images were creepy, but legal, and his |
| 10:38AM | 17 | conduct was that of an innocent man.  He didn't hide any of |
| 10:38AM | 18 | this stuff, and he cooperated fully. |
| 10:39AM | 19 | The Government just took this case too far. |
| 10:39AM | 20 | They're throwing in all this irrelevant stuff, and I think that |
| 10:39AM | 21 | shows you that they're worried about this case.  It shows |
| 10:39AM | 22 | really that I think they've convinced themselves that it fits |
| 10:39AM | 23 | the statute, but it shows I think they have doubts even now |
| 10:39AM | 24 | that this really does fit in the statute. |
| 10:39AM | 25 | So back to the actual evidence that really |

| | | |
|---|---|---|
| 10:39AM | 1 | matters, and that's the pictures that you can see for |
| 10:39AM | 2 | yourselves that you'll have back with you.  Nobody needs to |
| 10:39AM | 3 | tell you what you're seeing and what you're not seeing.  And |
| 10:39AM | 4 | again, if you are a note taker, this might be worth writing |
| 10:39AM | 5 | down also.  Look at the judge's instructions for what it takes |
| 10:39AM | 6 | to show sexually explicit conduct.  It kind of gives the |
| 10:39AM | 7 | context when you read the whole thing.  The term sexually |
| 10:39AM | 8 | explicit conduct -- and the judge has given us permission to |
| 10:39AM | 9 | anticipate what her instructions will be.  The term sexually |
| 10:40AM | 10 | explicit conduct means actual or simulated, and the first one |
| 10:40AM | 11 | is sexual intercourse, and it goes through all the variations |
| 10:40AM | 12 | of sexual intercourse.  We all know what that is.  Same sex, |
| 10:40AM | 13 | opposite sex, bestiality, sex with animals, masturbation, |
| 10:40AM | 14 | sadistic or masochistic abuse. |
| 10:40AM | 15 | Now, look, granted, you don't have to have |
| 10:40AM | 16 | nudity.  I'll give you that.  If they had pictures of children |
| 10:40AM | 17 | doing any of these things, it wouldn't matter what they were |
| 10:40AM | 18 | wearing.  That's child pornography.  No question about it.  But |
| 10:40AM | 19 | they hang their hat on this lascivious exhibition of the anus, |
| 10:40AM | 20 | genitals, or pubic area.  I submit to you that -- that if we |
| 10:40AM | 21 | had -- and nudity is a factor there.  It's not required.  I |
| 10:40AM | 22 | grant you that.  The statute doesn't require that, but if you |
| 10:40AM | 23 | look at these pictures, and you want to -- you want to call |
| 10:40AM | 24 | that sexually explicit conduct, I think that -- that you need |
| 10:41AM | 25 | more than what you're going to see when you take these pictures |

| | | |
|---|---|---|
| 10:41AM | 1 | back to the jury room.  And if -- if those pictures qualify |
| 10:41AM | 2 | under the definition of child pornography, subject to the |
| 10:41AM | 3 | penalties the Defendant may be facing -- which will be up to |
| 10:41AM | 4 | the judge -- then the Government is going to have to build a |
| 10:41AM | 5 | lot more prisons because, you know, parents who take their kids |
| 10:41AM | 6 | to the beach in outfits like this or the people that run |
| 10:41AM | 7 | Netflix or Amazon Prime or child beauty pageants, on and on and |
| 10:41AM | 8 | on.  I mean, we all have a lot of life experience, all the |
| 10:41AM | 9 | stuff that you see out there that's sexually suggestive. |
| 10:41AM | 10 | You're going to have to put all those people in prison.  So I |
| 10:42AM | 11 | would encourage you to let your own eyes evaluate the evidence. |
| 10:42AM | 12 | Now, because these images are creepy, some of |
| 10:42AM | 13 | you are going to probably have a hard time making the right |
| 10:42AM | 14 | call here, and that's understandable.  It's totally |
| 10:42AM | 15 | understandable.  They are creepy images, but creepy isn't |
| 10:42AM | 16 | criminal, and child erotica is not child pornography.  And if |
| 10:42AM | 17 | you find yourself after deliberating and going over all the |
| 10:42AM | 18 | evidence unsure and think it's still a tough call, that means |
| 10:42AM | 19 | you have a reasonable doubt. |
| 10:42AM | 20 | And after all, reasonable doubt is something |
| 10:42AM | 21 | that this FBI agent had 29 times from 2017 to 2019 when she |
| 10:42AM | 22 | called it child -- commercial child erotica. |
| 10:43AM | 23 | Now, reasonable doubt is just using reason, |
| 10:43AM | 24 | common sense, and your own life experience.  I would encourage |
| 10:43AM | 25 | you, if you're so inclined, to make a list of the questions you |

10:43AM  1    still have about this when you get back there and start

10:43AM  2    deliberating.  And those -- on a -- slips of paper and put

10:43AM  3    those in a pile, and those are reasonable doubts.  Those are

10:43AM  4    more reasonable doubts.

10:43AM  5          We probably all think that child erotica, even

10:43AM  6    though it's legal, is creepy all on its own.  I get it.  If you

10:43AM  7    think Mr. Velinov, age 49, used some bad judgment getting

10:43AM  8    involved with these people, sight unseen, over the internet

10:43AM  9    over here in the United States, he would probably agree with

10:43AM  10   you.  He's been brought here from his home country to face

10:43AM  11   trial in the United States, face very serious charges, and lost

10:43AM  12   just about everything he has.  He's paid an enormous price

10:44AM  13   already.

10:44AM  14         Now, the way this works, the Government, as the

10:44AM  15   Judge has explained to you, gets the last word, so that I'm not

10:44AM  16   going to have another opportunity to speak to you, but I want

10:44AM  17   to thank you for your time and attention and just want to leave

10:44AM  18   you with a few closing comments.

10:44AM  19         If you find yourself looking at all of this and

10:44AM  20   doubting that this is what the law means by child pornography,

10:44AM  21   you should be proud to do your duty and find Mr. Velinov not

10:44AM  22   guilty.  The Government needs to follow the law as written by

10:44AM  23   our elected representatives just like everybody else, not the

10:44AM  24   law that they want it to be.  If you as the judges of the facts

10:44AM  25   in this case, the jury, don't make them follow it and allow

10:44AM 1   what would be an injustice to Mr. Velinov, not just Mr. Plamen

10:45AM 2   Velinov loses, but we all lose a little bit of our freedom.

10:45AM 3   The Government, if they're not bound by the law, who can be?

10:45AM 4          The evidence, the lack of evidence, and the

10:45AM 5   conflicts in the evidence, they're not just one reason.

10:45AM 6   There's many reasons that I'm asking you to proudly return a

10:45AM 7   verdict of not guilty on both charges.

10:45AM 8          Thank you.

10:45AM 9          THE COURT:  All right.  Thank you, Mr. Kerr.  And the

10:45AM 10  Government may now make its rebuttal closing argument.

10:45AM 11         MR. REYNOLDS:  Thank you, Your Honor.  Ladies and

10:45AM 12  gentlemen, Mr. Kerr has spent a fair amount of time trying to

10:45AM 13  convince you that there's reasonable doubt in this case.  There

10:45AM 14  is no reasonable doubt in this case.  There is no reasonable

10:45AM 15  doubt that the pictures on this website depicted children

10:45AM 16  spreading their legs and exhibiting their clothed pubic areas

10:46AM 17  for the camera.  There is no reasonable doubt pictures on this

10:46AM 18  website depicted little girls whose skirts had been hiked up to

10:46AM 19  better expose their pubic areas and genitals covered by

10:46AM 20  underwear to the camera.

10:46AM 21         There is no reasonable doubt that many of the

10:46AM 22  images on this website showed the girls' vaginas visible

10:46AM 23  through their underwear.  Saying that there is no nudity

10:46AM 24  involved in this case is false.  When you can see someone's

10:46AM 25  genitals through their underwear, that is nudity.  The fact

| | | |
|---|---|---|
| 10:46AM | 1 | that there is transparent underwear covering it is not |
| 10:46AM | 2 | relevant.  There is no reasonable doubt in this case that many, |
| 10:46AM | 3 | many of the pictures have been designed so you can see the |
| 10:46AM | 4 | outline of the girls' genitals through their underwear. |
| 10:46AM | 5 | There is no reasonable doubt that these images |
| 10:46AM | 6 | and videos are advertised and distributed over these websites, |
| 10:46AM | 7 | and there is no reasonable doubt that for more than 13 years, |
| 10:47AM | 8 | this Defendant, Mr. Velinov, helped his co-conspirators -- Ken |
| 10:47AM | 9 | Power, Mark Bjorkman, and others -- they all conspired to run |
| 10:47AM | 10 | these websites, to profit off these images and these videos. |
| 10:47AM | 11 | Now, Mr. Kerr said a lot of things when he was |
| 10:47AM | 12 | up here, and I'd like to explain -- I'd like to respond to |
| 10:47AM | 13 | them, but he said trust your eyes.  Trust your vision.  Use |
| 10:47AM | 14 | your eyes, and use your vision.  We encourage you use your |
| 10:47AM | 15 | eyes, use your vision.  Look at the Government's exhibits. |
| 10:47AM | 16 | Look at Government's 344.  Look at Government's 342.  Look at |
| 10:47AM | 17 | Government's 350.  These are not the kind of images that you |
| 10:47AM | 18 | see on TV.  These are not the kind of images you see in |
| 10:47AM | 19 | catalogs.  Mr. Kerr said, "Well, we would have to arrest |
| 10:47AM | 20 | children -- or people who take their children to the beach." |
| 10:47AM | 21 | People take their children to the beach wearing these clothes, |
| 10:47AM | 22 | pose them in the poses that they are in these images and then |
| 10:48AM | 23 | take a photograph of that and then sell those images on the |
| 10:48AM | 24 | internet, that's the difference between what we're talking |
| 10:48AM | 25 | about.  Yes, we might have to build some more prisons if more |

10:48AM 1   people are doing that to children.

10:48AM 2               Mr. Kerr spoke about how long these websites

10:48AM 3   were up and, again, he suggested that Special Agent Boos saw

10:48AM 4   this material, thought it was no big deal, and just decided to

10:48AM 5   leave it up.  That is absolutely inconsistent with what she

10:48AM 6   testified.  She testified that at the time of her downloads,

10:48AM 7   she did not know where the websites were, she did not know who

10:48AM 8   was behind them, and she could not simply as a U.S. law

10:48AM 9   enforcement agent fly to the Netherlands and yank servers out

10:48AM 10  of racks in a foreign country.  She couldn't do that.  It took

10:48AM 11  time to figure out where these websites were.

10:48AM 12              Mr. Kerr makes a lot of arguments about how

10:48AM 13  these websites were on the clear net.  They were open.

10:48AM 14  Everybody knew where they were.  But I would address you,

10:48AM 15  ladies and gentlemen, to Government Exhibit 1004O.  This is an

10:49AM 16  email from Mr. Velinov to Mark Bjorkman.

10:49AM 17              "Hi, Mark.  We have two kind of servers.  Our

10:49AM 18  main server is at Leaseweb, and it is hidden behind proxies so

10:49AM 19  nobody knows about it.  We have five proxy servers located in

10:49AM 20  Novogara and pay via two different accounts there.  Kindest

10:49AM 21  regards, Plamen."  Why wasn't the U.S. Government able to

10:49AM 22  figure out where these servers are?  Why weren't people able to

10:49AM 23  figure out where these servers are?  There is an email from the

10:49AM 24  defendant who said, "I am hiding the location of the servers.

10:49AM 25  Kindest regards, Plamen."

10:49AM  1          Now, Mr. Kerr asked some of our witnesses,

10:49AM  2  "Well, can't you also use proxies to balance loads and that

10:49AM  3  sort of thing?"  He doesn't say, "We're balancing loads."  He

10:49AM  4  side, "Our server is hidden behind proxies so nobody knows

10:49AM  5  about it."

10:49AM  6          We've shown you Tiny Model News.  There are

10:50AM  7  statements on Tiny Model News that say, "Remember, for your

10:50AM  8  safety, stay clear of all chans and boards.  People are getting

10:50AM  9  arrested."  Talking about how some of these files are law

10:50AM  10 enforcement or FBI traps.  "Don't visit them.  You might as

10:50AM  11 well be sending your browsing history to the Government."  If

10:50AM  12 this is such a legitimate, open, innocent website, why are they

10:50AM  13 talking about their customers getting arrested?

10:50AM  14         Why is there an email apparently from Ken Power,

10:50AM  15 Government Exhibit 1005B, saying, "Are the customers getting

10:50AM  16 arrested?"  Exhibit Number 1005A, "We try to block the

10:50AM  17 countries the models are from from being able to access

10:50AM  18 ClipMonster."  Why are they blocking access to the websites

10:50AM  19 from where the models are from?  Shouldn't these models be

10:50AM  20 proud to see the content?  No.  They don't want people who know

10:50AM  21 these children to see this because they know what they're doing

10:50AM  22 is wrong.

10:50AM  23         Government Exhibit 608A.  These are the ICQ

10:50AM  24 chats.  This is filled with statements about how they're trying

10:51AM  25 to -- how best to pay their child pornography producers.  They

10:51AM   1   talk about, "Can we pay them in Bitcoins?  They are not as safe
10:51AM   2   as you think.  Yes, but it can be hard to trace."  Those are
10:51AM   3   Mr. Velinov's words.  "Bitcoins can be hard to trace."
10:51AM   4           Again, this is on page 25 of Government
10:51AM   5   Exhibit 608A, they're talking about paying a producer of
10:51AM   6   photographic material through Bitcoins.  Mr. Velinov says,
10:51AM   7   "Anyway, I believe that paying him through bank wire is way
10:51AM   8   safe than paying him through Bitcoins, way safer."  This is a
10:51AM   9   legitimate website.  Why are they talking about the safest way
10:51AM  10   to pay their producers?  Why are they talking about the safest
10:51AM  11   way to pay their photographers?  It's because they know what
10:51AM  12   they're doing is wrong.
10:51AM  13           Now, Mr. Kerr, again, spends a lot of time on
10:51AM  14   Special Agent Boos and suggests to you that Special Agent Boos
10:52AM  15   secretly didn't believe that this was child -- illegal sexual
10:52AM  16   material; that she secretly thought that this was legal child
10:52AM  17   erotica based on something she wrote in the status report.
10:52AM  18   Absolutely 100 percent inconsistent with the evidence you've
10:52AM  19   heard.  Special Agent Boos said she did this in the context of
10:52AM  20   a criminal investigation.  A criminal investigation is only
10:52AM  21   undertaken when the crime is being investigated.  There is no
10:52AM  22   such thing as a criminal investigation into whether or not
10:52AM  23   somebody ate a turkey sandwich for lunch because eating a
10:52AM  24   turkey sandwich is not a crime.
10:52AM  25           And look at what happened after Special Agent

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
| 10:52AM | 1  | Boos did her downloads.  Look at what happened.  There was an |
| 10:52AM | 2  | investigation of the websites.  There was an investigation of |
| 10:52AM | 3  | the people behind it.  This was coordinated law enforcement |
| 10:52AM | 4  | activity on two different continents.  At the same time the |
| 10:52AM | 5  | Dutch law enforcement officers were pulling the cables out of |
| 10:52AM | 6  | the back of the Newstar servers, HSI special agents were in |
| 10:53AM | 7  | Weston, Florida and Lutz, Florida searching the house of |
| 10:53AM | 8  | Mr. Power and Mr. Bjorkman.  That happened at the same time in |
| 10:53AM | 9  | two countries, two different continents.  Do you know how hard |
| 10:53AM | 10 | that is to coordinate? |
| 10:53AM | 11 | After that, the evidence seized was handed off |
| 10:53AM | 12 | to a small army of computer forensic experts.  Ms. Ziegler |
| 10:53AM | 13 | started following the money like a bloodhound.  Law enforcement |
| 10:53AM | 14 | realized there's another person in Bulgaria who's involved. |
| 10:53AM | 15 | They sent requests to the Republic of Bulgaria.  It lands on |
| 10:53AM | 16 | the desk of Investigator Angelov.  He assembles his team and |
| 10:53AM | 17 | gets to work.  He seizes bank records.  He seizes search |
| 10:53AM | 18 | warrants.  He seizes Mr. Velinov's computer and passes it back |
| 10:53AM | 19 | to law enforcement in the United States. |
| 10:53AM | 20 | Ladies and gentlemen, does this sound like the |
| 10:53AM | 21 | action of someone who doesn't think this is a big deal?  Does |
| 10:53AM | 22 | this sound like the action of law enforcement officers who |
| 10:53AM | 23 | don't think a crime has taken place?  Of course it doesn't.  Of |
| 10:53AM | 24 | course it does not. |
| 10:54AM | 25 | But let's pretend that Special Agent Boos |

10:54AM 1     actually did believe that this was child erotica. She didn't,

10:54AM 2     and she didn't write that. She didn't -- she never wrote that

10:54AM 3     she thought that every single image on this website was child

10:54AM 4     erotica. Of course the website did contain child erotica. She

10:54AM 5     never said that there is nothing on this website that is

10:54AM 6     illegal. Let's pretend she did say that. Let's pretend she

10:54AM 7     said exactly what Mr. Kerr said she said. "I don't think

10:54AM 8     anything on this website is illegal." Doesn't matter. Either

10:54AM 9     the content is illegal or it's not. The Government has proven

10:54AM 10     to you beyond a reasonable doubt that the content is illegal.

10:54AM 11     The only people whose opinion matters -- doesn't matter what

10:54AM 12     the Defendant thought about it. It doesn't matter what Special

10:54AM 13     Agent Boos thought about it. The only people whose opinions

10:54AM 14     matter are the opinions of you, the judges of the facts. If

10:54AM 15     you find that this material depicts the lascivious exhibition

10:54AM 16     of children's genitals and pubic areas, you must resolve that

10:54AM 17     issue in favor of the Government.

10:55AM 18          And the last thing I'll say is that Mr. Kerr

10:55AM 19     identified the other ways to violate the statute, and

10:55AM 20     absolutely. There are other ways to violate the statute.

10:55AM 21     Sexually explicit conduct can refer to sex acts. It can refer

10:55AM 22     to bestiality. It can refer to oral sex. It can refer to

10:55AM 23     things that, frankly, are not reflected in the images that

10:55AM 24     you've seen in this case. They can -- they can -- excuse me --

10:55AM 25     sexually explicit content includes all of those things or --

| | | |
|---|---|---|
| 10:55AM | 1 | **COURTROOM DEPUTY:**  Counsel, you have five minutes |
| 10:55AM | 2 | remaining. |
| 10:55AM | 3 | **MR. REYNOLDS:**  Thank you.  Or it includes the |
| 10:55AM | 4 | lascivious exhibition of the genitals or pubic area of any |
| 10:55AM | 5 | person.  When a statute says "or," you can violate it either |
| 10:55AM | 6 | way.  If a statute says it's illegal to drive a car under the |
| 10:55AM | 7 | influence of drugs or alcohol, it's not a defense that, "I was |
| 10:55AM | 8 | only under the influence of drugs when I drove the car."  It is |
| 10:55AM | 9 | enough if you find these images depict the lascivious |
| 10:55AM | 10 | exhibition of children's genitals or pubic areas, and we submit |
| 10:56AM | 11 | to you that using your vision, using your eyes, as Mr. Kerr |
| 10:56AM | 12 | encouraged you to do, you will find that the Government has |
| 10:56AM | 13 | proven beyond a reasonable doubt that this material is illegal. |
| 10:56AM | 14 | Ladies and gentlemen, this is an uncomfortable |
| 10:56AM | 15 | subject matter, and we can tell that you've been paying very, |
| 10:56AM | 16 | very close attention, and we thank you for that. |
| 10:56AM | 17 | There is one more thing the Government asks of |
| 10:56AM | 18 | you.  The Government asks you to go back into that jury room, |
| 10:56AM | 19 | consider the evidence, consider the testimony, look at the |
| 10:56AM | 20 | exhibits, and return the only verdict consistent with the |
| 10:56AM | 21 | evidence, the only verdict that is compelled by the evidence, |
| 10:56AM | 22 | and that is a verdict of guilty on both counts of the |
| 10:56AM | 23 | Indictment. |
| 10:56AM | 24 | Thank you for your time and for your service. |
| 10:56AM | 25 | **THE COURT:**  All right.  Thank you, Mr. Reynolds. |

10:56AM 1          All right.  We're now going to hand out the jury

10:56AM 2    instructions.  And if at any point anybody needs to take a

10:57AM 3    break, just let me know.  These are 28 pages.  It should take

10:57AM 4    approximately half an hour to read it.

10:57AM 5          There is a minor error in this.  When I get to

10:57AM 6    the correct page -- let's see.  And by minor, I mean one word

10:57AM 7    has been left off.  I think the first one is on page 19, and

10:57AM 8    it's the same word several times.  I'll get to it, and I just

10:57AM 9    ask you that you fill that in with your pen, that you write it

10:57AM 10   in.  By I time I realized that the error had been made, it was

10:57AM 11   too late to -- it was too complicated to make additional

10:57AM 12   copies, so that's why we're doing it this way.

10:57AM 13         Okay.  Everybody have their jury instructions?

10:57AM 14   All right.  We'll go through.

10:58AM 15         Members of the jury, it's my duty to instruct

10:58AM 16   you on the rules of law that you must use in deciding this

10:58AM 17   case.  After I've completed these instructions, you will go to

10:58AM 18   the jury room and begin your discussions, what we call your

10:58AM 19   deliberations.  You must decide whether the Government has

10:58AM 20   proved the specific facts necessary to find the Defendant

10:58AM 21   guilty beyond a reasonable doubt.

10:58AM 22         Instruction number 1.  Your decision must be

10:58AM 23   based only on the evidence presented during the trial.  You

10:58AM 24   must not be influenced in any way by either sympathy for or

10:58AM 25   prejudice against the Defendant or the Government.  You must

10:58AM  1    follow the law as I explain it, even if you do not agree with

10:58AM  2    the law, and you must follow all of my instructions as a whole.

10:58AM  3    You must not single out or disregard any of the Court's

10:58AM  4    instructions on the law.

10:58AM  5            The Indictment or formal charge against the

10:59AM  6    Defendant isn't evidence of guilt.  The law presumes every

10:59AM  7    defendant is innocent.  The Defendant does not have to prove

10:59AM  8    his innocence or produce any evidence at all.

10:59AM  9            A defendant does not have to testify, and if the

10:59AM  10   Defendant chose not to testify, you cannot consider that in any

10:59AM  11   way while making your decision.  The Government must prove

10:59AM  12   guilt beyond a reasonable doubt.  If it fails to do so, you

10:59AM  13   must find the Defendant not guilty.

10:59AM  14           Instruction number 2.  The Government's burden

10:59AM  15   of proof is heavy, but it doesn't have to prove a defendant's

10:59AM  16   guilt beyond all possible doubt.  The Government's proof only

10:59AM  17   has to exclude any reasonable doubt concerning the Defendant's

10:59AM  18   guilt.  A reasonable doubt is a real doubt based on your reason

10:59AM  19   and common sense after you've carefully and impartially

10:59AM  20   considered all the evidence in the case.

11:00AM  21           Proof beyond a reasonable doubt is proof so

11:00AM  22   convincing that you would be willing to rely and act on it

11:00AM  23   without hesitation in the most important of your own affairs.

11:00AM  24   If you are convinced that the Defendant has been proved guilty

11:00AM  25   beyond a reasonable doubt, say so.  If you are not convinced,

| | | |
|---|---|---|
| 11:00AM | 1 | say so. |
| 11:00AM | 2 | Jury instruction number 3.  As I said before, |
| 11:00AM | 3 | you must consider only the evidence that I have admitted in the |
| 11:00AM | 4 | case.  Evidence includes the testimony of witnesses and the |
| 11:00AM | 5 | exhibits admitted, but anything the lawyers say is not evidence |
| 11:00AM | 6 | and isn't binding on you. |
| 11:00AM | 7 | You shouldn't assume from anything I've said |
| 11:00AM | 8 | that I have any opinion about any factual issue in this case. |
| 11:00AM | 9 | Except for my instructions to you on the law, you should |
| 11:00AM | 10 | disregard anything I may have said during the trial in arriving |
| 11:01AM | 11 | at your own decision about the facts.  Your own recollection |
| 11:01AM | 12 | and interpretation of the evidence is what matters. |
| 11:01AM | 13 | In considering the evidence, you may use |
| 11:01AM | 14 | reasoning and common sense to make deductions and reach |
| 11:01AM | 15 | conclusions.  You shouldn't be concerned about whether the |
| 11:01AM | 16 | evidence is direct or circumstantial. |
| 11:01AM | 17 | Direct evidence is the testimony of a person who |
| 11:01AM | 18 | asserts that he or she has actual knowledge of a fact, such as |
| 11:01AM | 19 | an eyewitness. |
| 11:01AM | 20 | Circumstantial evidence is proof of a chain of |
| 11:01AM | 21 | facts and circumstances that tend to prove or disprove a fact. |
| 11:01AM | 22 | There's no real difference in the weight you may give to either |
| 11:01AM | 23 | direct or circumstantial evidence. |
| 11:01AM | 24 | Jury instruction number 4.  We seek a fair trial |
| 11:01AM | 25 | for all, regardless of what language they speak.  We have had |

|   |   |   |
|---|---|---|
| 11:01AM | 1 | an interpreter assist us through these proceedings, and you |
| 11:01AM | 2 | should know what they can do and what they cannot do. |
| 11:02AM | 3 | Basically the interpreter was here only to help us communicate |
| 11:02AM | 4 | during the proceedings.  The interpreter is not a party in the |
| 11:02AM | 5 | case, has no interest in the case, and is completely neutral. |
| 11:02AM | 6 | Accordingly, the interpreter is not working for either party. |
| 11:02AM | 7 | The interpreter's sole responsibility was to enable us to |
| 11:02AM | 8 | communicate with each other.  Treat the interpreter of the |
| 11:02AM | 9 | witness's testimony as if the witness had spoken English and no |
| 11:02AM | 10 | interpreter was present.  Do not allow the fact that the |
| 11:02AM | 11 | testimony was given in a language other than English influence |
| 11:02AM | 12 | you in any way.  If any of you understood the language of the |
| 11:02AM | 13 | witness, disregard completely what the witness said in their |
| 11:02AM | 14 | language.  Consider as evidence only what was provided by the |
| 11:02AM | 15 | interpreter in English. |
| 11:02AM | 16 | If you think an interpreter has made a mistake, |
| 11:02AM | 17 | you may bring it to the attention of the Court, but you should |
| 11:02AM | 18 | make your deliberations on the basis of the official |
| 11:03AM | 19 | interpretation. |
| 11:03AM | 20 | Instruction number 5.  When I say you must |
| 11:03AM | 21 | consider all the evidence, I don't mean that you must accept |
| 11:03AM | 22 | all the evidence as true or accurate.  You should decide |
| 11:03AM | 23 | whether you believe what each witness had to say and how |
| 11:03AM | 24 | important that testimony was.  In making that decision, you may |
| 11:03AM | 25 | believe or disbelieve any witness in whole or in part.  The |

11:03AM 1    number of witnesses testifying concerning a particular point

11:03AM 2    doesn't necessarily matter.

11:03AM 3              To decide whether you believe any witness, I

11:03AM 4    suggest that you ask yourself a few questions.  Did the witness

11:03AM 5    impress you as one who was telling the truth?  Did the witness

11:03AM 6    have any particular reason not to tell the truth?  Did the

11:03AM 7    witness have a personal interest in the outcome of the case?

11:03AM 8    Did the witness seem to have a good memory?  Did the witness

11:03AM 9    have the opportunity and ability to accurately observe the

11:03AM 10   things he or she testified about?  Did the witness appear to

11:04AM 11   understand the questions clearly and answer them directly?  Did

11:04AM 12   the witness's testimony differ from other testimony or other

11:04AM 13   evidence?

11:04AM 14             Instruction number 6.  You should also ask

11:04AM 15   yourself whether there was evidence that a witness testified

11:04AM 16   falsely about an important fact and ask whether there was

11:04AM 17   evidence that at some other time a witness said or did

11:04AM 18   something or didn't say or do something that was different from

11:04AM 19   the testimony the witness gave during this trial.

11:04AM 20             To decide whether you believe a witness, you may

11:04AM 21   consider the fact that the witness has been convicted of a

11:04AM 22   felony or a crime involving dishonesty or a false statement.

11:04AM 23   But keep in mind that a simple mistake doesn't mean a witness

11:04AM 24   wasn't telling the truth as he or she remembers it.  People

11:04AM 25   naturally tend to forget some things or remember them

11:04AM   1   inaccurately.  So if a witness misstated something, you must

11:05AM   2   decide whether it was because of an innocent lapse in memory or

11:05AM   3   an intentional deception.  The significance of your decision

11:05AM   4   may depend on whether the misstatement is about an important

11:05AM   5   fact or about an unimportant detail.

11:05AM   6              Instruction number 7.  When scientific,

11:05AM   7   technical, or other specialized knowledge might be helpful, a

11:05AM   8   person who has special training or experience in that field is

11:05AM   9   allowed to state an opinion about the matter, but that doesn't

11:05AM   10  mean you must accept the witness's opinion.  As with any other

11:05AM   11  witness's testimony, you must decide for yourself whether to

11:05AM   12  rely upon the opinion.

11:05AM   13             Instruction number 8.  The Indictment charges

11:05AM   14  two separate crimes called counts against the Defendant.  Each

11:05AM   15  count has a number.  You will be given a copy of the Indictment

11:05AM   16  to refer to during your deliberations.

11:06AM   17             Count 1 charges that the Defendant knowingly

11:06AM   18  conspired to advertise visual depictions of minors engaged in

11:06AM   19  sexually explicit conduct.

11:06AM   20             Count 2 charges that the Defendant knowingly

11:06AM   21  conspired to distribute visual depictions of minors engaged in

11:06AM   22  sexually explicit conduct.

11:06AM   23             But first note that the Defendant is not charged

11:06AM   24  in Count 1 and 2 with committing a substantive offense.  He is

11:06AM   25  charged with conspiring to commit that offense.  I will also

give you specific instructions on conspiracy.

Instruction number 9.  Each count of the Indictment charges a separate crime.  You must consider each crime and the evidence relating to it separately.  If you find the Defendant guilty or not guilty of one crime, that must not affect your verdict for any other crime.  I caution you that the Defendant is on trial only for the specific crimes charged in the Indictment.  You're here to determine from the evidence in this case whether the Defendant is guilty or not guilty of those specific crimes.  You must never consider punishment in any way to decide whether the Defendant is guilty.  If you find the Defendant guilty, the punishment is for the judge alone to decide later.

Instruction number 10.  When a statute specifies multiple alternatives ways in which an offense may be committed, the Indictment may allege the multiple ways in the conjunctive; that is, by using the word "and."  If only one of the alternatives is proved beyond a reasonable doubt, that is sufficient for conviction so long as you agree unanimously as to that alterative.

Jury instruction number 11.  You'll see that the Indictment charges that a crime was committed on or about a certain date or in or about a particular month or year.  The Government doesn't have to prove that the offense occurred on an exact date.  The Government only has to prove beyond a

11:08AM   1   reasonable doubt that the crime was committed on a date

11:08AM   2   reasonably close to the date alleged.

11:08AM   3            The word "knowingly" means that an act was done

11:08AM   4   voluntarily and intentionally and not because of a mistake or

11:08AM   5   by accident.

11:08AM   6            Instruction -- jury instruction number 12.  The

11:08AM   7   Government must prove beyond a reasonable doubt that the

11:08AM   8   Defendant was the person who committed the crime.  If a witness

11:08AM   9   identifies the defendant as the person who committed the crime,

11:08AM  10   you must decide whether the witness is telling the truth.  But

11:08AM  11   even if you believe the witness is telling the truth, you must

11:08AM  12   still decide how accurate the identification is.

11:08AM  13            I suggest that you ask yourselves questions:  1,

11:09AM  14   did the witness have an adequate opportunity to observe the

11:09AM  15   person at the time the crime was committed?  2, how much time

11:09AM  16   did the witness have to observe the person?  3, how close was

11:09AM  17   the witness?  4, did anything affect the witness's ability to

11:09AM  18   see?  5, did the witness know or see the person at an earlier

11:09AM  19   time?

11:09AM  20            You may also consider the circumstances of the

11:09AM  21   identification of the Defendant such as the way the Defendant

11:09AM  22   was presented to the witness for identification, and the length

11:09AM  23   of time between the crime and the identification of the

11:09AM  24   Defendant.  After examining all the evidence, if you have a

11:09AM  25   reasonable doubt that the Defendant was the person who

11:09AM 1    committed the crime, you must find the Defendant not guilty.

11:09AM 2                  Jury instruction number 13.  You must consider

11:09AM 3    some witness's testimony with more caution than others.  In

11:09AM 4    this case, the Government has made a plea agreement with

11:10AM 5    another defendant in exchange for her testimony.  Such plea

11:10AM 6    bargaining, as it's called, provides for the possibility of a

11:10AM 7    lesser sentence than that other defendant would normally face.

11:10AM 8    Plea bargaining is lawful and proper, and the rules of this

11:10AM 9    Court expressly provide for it.  But a witness who hopes to

11:10AM 10   gain more favorable treatment may have a reason to make a false

11:10AM 11   statement in order to strike a good bargain with the

11:10AM 12   Government.  So while a witness at that time may be entirely

11:10AM 13   truthful when testifying, you should consider that testimony

11:10AM 14   with more caution than the testimony of other witnesses, and

11:10AM 15   the fact that a witness has pleaded guilty to an offense isn't

11:10AM 16   evidence of the guilt of the other person.

11:10AM 17                  Jury instruction number 14.  You must consider

11:10AM 18   some witnesses' testimony with more caution than others.  For

11:11AM 19   example, paid informants, witnesses who have been promised

11:11AM 20   immunity from prosecution, or witnesses who hope to gain more

11:11AM 21   favorable treatment in their own cases, may have a reason to

11:11AM 22   make a false statement in order to strike a good bargain with

11:11AM 23   the Government.  So while a witness of that kind may be

11:11AM 24   entirely truthful while testifying, you should consider that

11:11AM 25   testimony with more caution than the testimony of other

11:11AM 1    witnesses.

11:11AM 2                Instruction number 15.  It's a federal crime for

11:11AM 3    anyone to conspire or agree with someone else to advertise or

11:11AM 4    to distribute visual depictions of minors engaged in sexually

11:11AM 5    explicit conduct.  A conspiracy is an agreement by two or more

11:11AM 6    people to commit an unlawful act.  In other words, it is a kind

11:11AM 7    of partnership for criminal purposes.  Each member of a

11:12AM 8    conspiracy becomes the agent or partner of every other member.

11:12AM 9                The Government does not have to prove that all

11:12AM 10   the people named in the Indictment were members of the plan or

11:12AM 11   that those who were members made any kind of formal agreement.

11:12AM 12   The Government does not have to prove that the members planned

11:12AM 13   to gather all the details of the plan -- I'm sorry, all the

11:12AM 14   details of the plan and effort -- there must be a word missing

11:12AM 15   here.  Excuse me.  I'll reread this again.  The Government does

11:12AM 16   not have to prove that the members planned together all the

11:12AM 17   details of the plan -- I'll look it up, but it's probably in an

11:12AM 18   effort to commit the intended crime.  I'll check on that, but I

11:12AM 19   believe that's the word that's missing there, in an effort to

11:12AM 20   commit the intended crime.  The heart of a conspiracy is the

11:12AM 21   making of the unlawful plan itself.  The Government does not

11:12AM 22   have to prove that the conspirator succeeded in carrying out

11:13AM 23   the plan.

11:13AM 24                The Defendant can be found guilty of a

11:13AM 25   conspiracy offense only if all the following facts are proved

11:13AM 1   beyond a reasonable doubt:  1, two or more persons in some way
11:13AM 2   agreed to try to accomplish a shared and unlawful plan; 2, the
11:13AM 3   Defendant knew the purpose of the plan and knowingly and
11:13AM 4   voluntarily joined in it.
11:13AM 5           A person may be a conspirator without knowing
11:13AM 6   all the details of the unlawful plan or the names and
11:13AM 7   identities of all the other alleged conspirators.
11:13AM 8           If the Defendant played only a minor part in the
11:13AM 9   plan but had a general understanding of the unlawful purpose of
11:13AM 10  the plan and knowingly and voluntarily joined in the plan on at
11:13AM 11  least one occasion, that's sufficient for you to find the
11:13AM 12  defendant guilty, but simply being present at the scene of an
11:13AM 13  event or merely associating with certain people and discussing
11:14AM 14  common goals and interests doesn't establish proof of a
11:14AM 15  conspiracy.  A person who doesn't know about the conspiracy --
11:14AM 16  about a conspiracy but happens to act in a way that advances
11:14AM 17  some purpose of one doesn't automatically become a conspirator.
11:14AM 18          While you are required to consider whether the
11:14AM 19  Defendant agreed with one or more other persons to accomplish a
11:14AM 20  shared and unlawful plan, you should not concern yourself with
11:14AM 21  why the Defendant is the only person on trial and why no other
11:14AM 22  co-conspirators are included in the Indictment against the
11:14AM 23  Defendant.
11:14AM 24          Excuse me one second.  I'll come back to that in
11:14AM 25  a minute to make certain I've read that correctly on page 16.

| | |
|---|---|
| 11:15 AM | 1 |
| 11:15 AM | 2 |
| 11:15 AM | 3 |

Okay.  We've now moved on to page 18, jury instruction number 16.  It's a federal crime for any person to make, print, or publish, or cause to be made, printed or published any notice or advertisement seeking or offering to display, distribute, or reproduce any visual depiction if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct, if such person knows or has reason to know such notice or advertisement will be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer or mail, or such notice or advertisement is transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer or mail.

The elements of advertising -- I'm sorry.  The elements of advertising visual depictions of minors engaged in sexually explicit conduct are as follows:  1, an individual knowingly made, printed, published, or caused to be made, printed, or published a notice or advertisement offering; 2, to display, distribute, or reproduce any visual depiction involving the use of a minor engaged in sexually explicit conduct, and the visual depiction is of such conduct; and 3, the individual knows or has reason to know that the notice or advertisement would be transported using any means or facility

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
Middle District of Florida

of interstate or foreign commerce or in or affecting interstate
or foreign commerce by any means, including by computer or
mail; or 4, such notice or advertisement was transported using
any means or facility of interstate or foreign commerce or in
or affecting interstate or foreign commerce by any means,
including by computer or mail.

Count 1 of the Indictment charges that the
Defendant conspired to commit this offense.  The Government
does not need to prove that the Defendant actually committed
this offense, just that he conspired with at least one other
person to commit it.

The term "minor" means any person who is less
than 18 years old.

The term "interstate or foreign commerce" means
the movement of a person or property from one state to another
state or from one state to another country.

The term "state" includes a state of the United
States, the District of Columbia, and any commonwealth
territory or possession of the United States.

It is not necessary for the Government to prove
the Defendant knew the notice or advertisement had moved in
interstate or foreign commerce.

The term "visual depiction" includes undeveloped
film and videotape and tape stored on a computer disk or by any
other electronic means that can be converted into a visual

11:18AM 1    image.

11:18AM 2              The term "sexually explicit conduct" means

11:18AM 3    actual or simulated A, sexual intercourse, including

11:19AM 4    genital-genital, oral-genital, anal-genital or oral-anal,

11:19AM 5    whether between persons of the same or opposite sex; B,

11:19AM 6    bestiality; C, masturbation; D, sadistic or masochistic abuse

11:19AM 7    for -- and here's where you're going to need to add a word in

11:19AM 8    just a moment; or E, lascivious exhibition of the -- and you're

11:19AM 9    going to need to add the word anus, a-n-u-s comma, genitals, or

11:19AM 10   pubic area of any person.  So, again, you need to add the word

11:19AM 11   "anus" comma before the word "genitals" on page 19.

11:19AM 12             Images and videos must include depictions that

11:19AM 13   meet this definition of sexually explicit conduct to qualify as

11:19AM 14   sexually explicit conduct.  Sexually explicit conduct requires

11:20AM 15   more than images of children that are sexually suggestive.

11:20AM 16   Merely sexually suggestive images of children are sometimes

11:20AM 17   referred to as child erotica.

11:20AM 18             What exactly constitutes a forbidden lascivious

11:20AM 19   exhibition of the -- and here you need to add the word "anus,"

11:20AM 20   a-n-u-s comma, before the word "genitals," so it'll read what

11:20AM 21   exactly constitutes a forbidden lascivious exhibition of the

11:20AM 22   anus, genitals, or pubic area and how that differs from an

11:20AM 23   innocuous photograph of a naked child -- e.g., a family

11:20AM 24   photograph of the child taking a bath or an artistic

11:20AM 25   masterpiece portraying a naked child model -- is not concrete.

| | | |
|---|---|---|
| 11:20AM | 1 | "Lascivious exhibition" means indecent exposure |
| 11:20AM | 2 | of the -- and, again, you need to add the word "anus" here, |
| 11:21AM | 3 | a-n-u-s comma, so that sentence will read "lascivious |
| 11:21AM | 4 | exhibition" means indecent exposure of the anus comma, |
| 11:21AM | 5 | genitals, or pubic area, usually to incite lust.  Visual |
| 11:21AM | 6 | depictions do not need to be nude depictions to qualify as |
| 11:21AM | 7 | lascivious exhibitions of the -- add the word "anus" comma |
| 11:21AM | 8 | before "genitals."  So it'll be a-n-u-s comma.  That sentence |
| 11:21AM | 9 | or that phrase will then read lascivious exhibitions of the |
| 11:21AM | 10 | anus, genitals, or pubic area of any person.  Not every |
| 11:21AM | 11 | exposure is a lascivious exhibition. |
| 11:21AM | 12 | To decide whether a visual depiction is a |
| 11:21AM | 13 | lascivious exhibition, you must consider the context and |
| 11:21AM | 14 | setting in which the -- and you're going to need to add the |
| 11:21AM | 15 | word "anus," a-n-u-s comma, before the word "genitalia" in that |
| 11:22AM | 16 | phrase.  So that phrase will then read you must consider the |
| 11:22AM | 17 | context and setting in which the anus -- I'm sorry, in which |
| 11:22AM | 18 | the anus, genitalia, or pubic area is being displayed.  Factors |
| 11:22AM | 19 | you may consider include the overall content of the material; |
| 11:22AM | 20 | whether the focal point of the visual depiction is on the |
| 11:22AM | 21 | minor's -- and you need to add the word "anus" there after |
| 11:22AM | 22 | minor's, so it'll be is on the minor's anus, a-n-u-s comma, |
| 11:22AM | 23 | genitalia, or pubic area; whether the setting of the depiction |
| 11:22AM | 24 | appears to be sexually inviting or suggestive, for example, in |
| 11:22AM | 25 | a location or in a pose associated with sexual activity; |

11:22AM  1   whether the minor appears to be displayed in an -- excuse me,

11:22AM  2   in an unnatural pose or in inappropriate attire; whether the

11:23AM  3   minor is partially clothed or nude; whether the depiction

11:23AM  4   appears to convey sexual coyness or an apparent willingness to

11:23AM  5   engage in sexual activity; and whether the depiction appears to

11:23AM  6   have been designed to elicit a sexual response in the viewer.

11:23AM  7   A visual depiction need not have all these factors to be a

11:23AM  8   lascivious exhibition.

11:23AM  9           The term "computer" means an electronic,

11:23AM  10  magnetic, optical, electrochemical, or other high-speed

11:23AM  11  data-processing device performing logical, arithmetic, or

11:23AM  12  storage functions and includes any data storage facility or

11:23AM  13  communications facility directly relating to or operating in

11:24AM  14  conjunction with that device, but the term does not include an

11:24AM  15  automated typewriter or typesetter, portable handheld

11:24AM  16  calculator or similar devices that are limited in function to

11:24AM  17  only word processing or mathematical calculations.

11:24AM  18           Instruction number 17.  It is a federal crime to

11:24AM  19  knowingly distribute any visual depiction using any means or

11:24AM  20  facility of interstate or foreign commerce or that has been

11:24AM  21  shipped or transported in or affecting interstate or foreign

11:24AM  22  commerce by any means, including by computer, when the visual

11:24AM  23  depiction was produced by using a minor engaging in sexually

11:24AM  24  explicit conduct and depicts the conduct.

11:24AM  25           The elements of distributing visual depictions

of minors engaged in sexually explicit conduct are as follows:
1, the individual knowingly distributed a visual depiction; 2,
the depiction was shipped or transported using any means or
facility of interstate or foreign commerce or in or affecting
interstate or foreign commerce by any means, including
computer; 3, producing a visual depiction involved using a
minor engaged in sexually explicit conduct; 4, the depiction is
of a minor engaged in sexually explicit conduct; and 5, the
individual knew that at least one performer in the visual
depiction was a minor and knew that the depiction showed the
minor engaged in sexually explicit conduct.

Count 2 of the Indictment charges that the
Defendant conspired to commit this offense.  The Government
does not need to prove that the Defendant actually committed
this offense; just that he conspired with at least one other
person to commit it.

To "distribute" something simply means to
deliver or transfer possession of it to someone else with or
without any financial interest in the transaction.

A "minor" means any person under 18 years old.

"Interstate or foreign commerce" is the movement
of property between different states or between the United
States and any place outside the United States.

The term "state" means a state of the United
States, the District of Columbia, and any commonwealth,

11:26AM   1    territory, or possession of the United States.

11:26AM   2              The term "computer" includes any high-speed

11:26AM   3    data-processing device that can perform logical, arithmetic, or

11:27AM   4    storage functions, including any data storage facility or

11:27AM   5    communications facility that is directly related to or operates

11:27AM   6    in conjunction with a device.  It doesn't include an automated

11:27AM   7    typewriter or typesetter or portable handheld calculator or

11:27AM   8    similar devices which are limited in function to word

11:27AM   9    processing or mathematical calculations.

11:27AM  10              The term "sexually explicit conduct" means

11:27AM  11    actual or simulated A, sexual intercourse, including

11:27AM  12    genital-genital, oral-genital, anal-genital, or oral-anal,

11:27AM  13    whether between persons of the same or opposite sex; B,

11:27AM  14    bestiality; 6 -- I'm sorry, C, masturbation; D, sadistic or

11:27AM  15    masochistic abuse; or E, lascivious exhibition of a -- and

11:27AM  16    here's where you need to add the word "anus" again, a-n-u-s

11:27AM  17    comma, so that phrase will read lascivious exhibition of the

11:28AM  18    anus comma, genitals, or pubic area of any person.

11:28AM  19              Images and videos must include depictions that

11:28AM  20    meet this definition of sexually explicit conduct to qualify as

11:28AM  21    sexually explicit conduct.

11:28AM  22              Sexually explicit conduct requires more than --

11:28AM  23    more than images of the children that are sexually suggestive.

11:28AM  24    Merely sexually suggestive images of children are sometimes

11:28AM  25    referred to as child erotica.

| | | |
|---|---|---|
| 11:28AM | 1 | And there will be some more changes here where I |
| 11:28AM | 2 | will add a word on this page, and I'll tell you as I add it. |
| 11:28AM | 3 | What exactly constitutes a forbidden lascivious |
| 11:28AM | 4 | exhibition of the -- please add the word "anus," a-n-u-s comma, |
| 11:29AM | 5 | so that sentence will read what exactly constitutes a forbidden |
| 11:29AM | 6 | lascivious exhibition of the anus, genitals, or pubic area and |
| 11:29AM | 7 | how that differs from an innocuous photograph of a naked |
| 11:29AM | 8 | child -- e.g., a family photograph of a child taking a bath or |
| 11:29AM | 9 | an artistic masterpiece portraying a naked child model -- is |
| 11:29AM | 10 | not concrete. |
| 11:29AM | 11 | "Lascivious exhibition" means indecent exposure, |
| 11:29AM | 12 | and here add the word "anus" comma before the word "genitals." |
| 11:29AM | 13 | So that sentence will read lascivious exhibition means indecent |
| 11:29AM | 14 | exposure of the anus comma, genitals, or pubic area usually to |
| 11:29AM | 15 | incite lust.  Visual depictions do not need to be nude |
| 11:30AM | 16 | depictions to qualify as lascivious exhibitions of the -- add |
| 11:30AM | 17 | the word "anus," a-n-u-s comma, before the word "genitals."  So |
| 11:30AM | 18 | that phrase will be lascivious exhibition of the anus comma, |
| 11:30AM | 19 | genitals, or pubic area of any person.  Not every exposure is a |
| 11:30AM | 20 | lascivious exhibition. |
| 11:30AM | 21 | To decide whether a visual depiction is a |
| 11:30AM | 22 | lascivious exhibition, you must consider the context and |
| 11:30AM | 23 | setting in which the -- add the word "anus," a-n-u-s comma, |
| 11:30AM | 24 | before the word "genitalia."  So that phrase will be you must |
| 11:30AM | 25 | consider the context and setting in which the anus comma, |

| | | |
|---|---|---|
| 11:30AM | 1 | genitalia, or pubic area is being displayed. |
| 11:30AM | 2 | Factors you may consider include:  The overall |
| 11:30AM | 3 | content of the material; whether the focal point of the visual |
| 11:31AM | 4 | depictions is on the minors' -- add the word "anus," a-n-u-s |
| 11:31AM | 5 | before "genitalia," so that sentence will be or phrase will be |
| 11:31AM | 6 | whether the focal point of the visual depiction is on the |
| 11:31AM | 7 | minor's anus, a-n-u-s comma, genitalia, or pubic area; whether |
| 11:31AM | 8 | the setting of the depiction appears to be sexually inviting or |
| 11:31AM | 9 | suggestive, for example, in a location or in a pose associated |
| 11:31AM | 10 | with sexual activity; whether the minor appears to be displayed |
| 11:31AM | 11 | in an unnatural pose or in inappropriate attire; whether the |
| 11:31AM | 12 | minor is partially clothed or nude; whether the depiction |
| 11:31AM | 13 | appears to convey sexual coyness or an apparent willingness to |
| 11:31AM | 14 | engage in sexual activity, and whether the depiction appears to |
| 11:31AM | 15 | have been designed to elicit a sexual response in the viewer. |
| 11:32AM | 16 | A visual depiction need not to have all of these |
| 11:32AM | 17 | factors to be a lascivious exhibition. |
| 11:32AM | 18 | The term "visual depiction" included undeveloped |
| 11:32AM | 19 | film and videotape and data stored on computer media or by any |
| 11:32AM | 20 | other electronic means that can be converted into a visual |
| 11:32AM | 21 | image. |
| 11:32AM | 22 | Jury instruction number 18.  You've been |
| 11:32AM | 23 | permitted to take notes during the trial.  Most of you, perhaps |
| 11:32AM | 24 | all of you, have taken advantage of that opportunity.  You must |
| 11:32AM | 25 | use your notes only as a memory aid during deliberations.  You |

| | | |
|---|---|---|
| 11:32AM | 1 | must not give your notes priority over your independent |
| 11:32AM | 2 | recollection of the evidence, and you must not allow yourself |
| 11:32AM | 3 | to be unduly influenced by the notes of other jurors. |
| 11:32AM | 4 | I emphasize that notes are not entitled to any |
| 11:33AM | 5 | greater weight than your memories or impressions about the |
| 11:33AM | 6 | testimony. |
| 11:33AM | 7 | Jury instruction number 19.  Your verdict, |
| 11:33AM | 8 | whether guilty or not guilty, must be unanimous.  In other |
| 11:33AM | 9 | words, you must all agree.  Your deliberations are secret, and |
| 11:33AM | 10 | you'll never have to explain your verdict to anyone.  Each of |
| 11:33AM | 11 | you must decide the case for yourself, but only after fully |
| 11:33AM | 12 | considering the evidence with the other jurors.  So you must |
| 11:33AM | 13 | discuss the case with one another and try to reach an |
| 11:33AM | 14 | agreement.  While you're discussing the case, don't hesitate to |
| 11:33AM | 15 | re-examine your own opinion and change your mind if you become |
| 11:33AM | 16 | convinced that you were wrong, but don't give up your honest |
| 11:33AM | 17 | beliefs just because others think differently or because you |
| 11:33AM | 18 | simply want to get the case over with.  Remember that a very |
| 11:33AM | 19 | real way, you're judges, judges of the facts.  Your only |
| 11:34AM | 20 | interest is to seek the truth in the evidence in this case. |
| 11:34AM | 21 | All right.  Before we hand out the verdict form, |
| 11:34AM | 22 | let me just go back to page 16.  Let me just read this again, |
| 11:34AM | 23 | because I do think there's a word missing.  Yes, the word in -- |
| 11:34AM | 24 | I don't have the statute in front of me, but I believe that |
| 11:34AM | 25 | that is correct.  The details of the plan in an effort to |

| | | |
|---|---|---|
| 11:34AM | 1 | commit the intended crime.  Mr. Reynolds, do you agree with |
| 11:34AM | 2 | that? |
| 11:34AM | 3 |       **MR. REYNOLDS:**  Yes, Your Honor. |
| 11:34AM | 4 |       **THE COURT:**  Mr. Kerr? |
| 11:34AM | 5 |       **MR. KERR:**  Yes, Your Honor. |
| 11:34AM | 6 |       **THE COURT:**  Okay.  So, ladies and gentlemen, on |
| 11:34AM | 7 | page 16, please add the word "in" after the word "plan," okay? |
| 11:35AM | 8 | So the other changes -- I'm just going through |
| 11:35AM | 9 | this again just so that everybody has it.  Page 19, add the |
| 11:35AM | 10 | word "anus," a-n-u-s, before "genitals." |
| 11:35AM | 11 | Page 20, the second full paragraph, add the word |
| 11:35AM | 12 | "anus" comma before "genitals" in the first sentence of the |
| 11:35AM | 13 | second paragraph. |
| 11:35AM | 14 | Third paragraph, first sentence, add the word |
| 11:35AM | 15 | "anus" before "genitals."  In that same paragraph, third line, |
| 11:35AM | 16 | the word "anus" before "genitals."  Fourth paragraph, second |
| 11:35AM | 17 | line add the word "anus" before "genitalia."  Page 20, the -- |
| 11:35AM | 18 | I'm sorry, that last paragraph, the second bullet point, add |
| 11:35AM | 19 | the word "anus" after "minors" and before "genitalia." |
| 11:36AM | 20 | Okay.  Page 23, E, in the next to the last |
| 11:36AM | 21 | paragraph, lascivious exhibition of the anus.  Add the word |
| 11:36AM | 22 | "anus" before "genitals."  Page 24, top line, first paragraph. |
| 11:36AM | 23 | Add the word "anus" comma before "genitals," top line.  Second |
| 11:36AM | 24 | paragraph, add the word "anus" before "genitals," top line of |
| 11:36AM | 25 | the second paragraph.  And third line of that paragraph, add |

| | | |
|---|---|---|
| 11:36AM | 1 | the word "anus" before "genitals."  Third paragraph -- I meant |
| 11:36AM | 2 | to say second paragraph, if I said third.  I don't remember |
| 11:36AM | 3 | what I said.  Anyway, second paragraph, third line.  Now we're |
| 11:36AM | 4 | on third paragraph, second line, add the word "anus" before |
| 11:36AM | 5 | "genital."  Okay.  The bullet points of that -- of the third |
| 11:37AM | 6 | paragraph, second bullet point is on the minor's anus.  You're |
| 11:37AM | 7 | going to add the word "anus" after "minors" and before |
| 11:37AM | 8 | "genitalia." |
| 11:37AM | 9 | I think that those are the changes.  Anything I |
| 11:37AM | 10 | may have missed, Counsel, from the Government? |
| 11:37AM | 11 | MR. REYNOLDS:  I don't believe so, Your Honor. |
| 11:37AM | 12 | THE COURT:  Okay. |
| 11:37AM | 13 | MR. REYNOLDS:  Is Your Honor still planning on |
| 11:37AM | 14 | reading instruction number 20?  I don't think that's been done. |
| 11:37AM | 15 | THE COURT:  I'm sorry? |
| 11:37AM | 16 | MR. REYNOLDS:  I don't believe Your Honor has yet |
| 11:37AM | 17 | read instruction number 20 to the jury. |
| 11:37AM | 18 | THE COURT:  No, I'm getting ready to do that.  I'm |
| 11:37AM | 19 | going do it at the end, the very end.  I'm just trying to see |
| 11:37AM | 20 | if there's any other changes before we do the verdict form. |
| 11:37AM | 21 | Yeah. |
| 11:37AM | 22 | Mr. Kerr, any other changes? |
| 11:37AM | 23 | MR. KERR:  Nothing, Your Honor. |
| 11:37AM | 24 | THE COURT:  Okay.  Thank you.  So take a look, |
| 11:37AM | 25 | please, then jury instruction number 20.  Okay.  And then we'll |

11:37AM 1    do the verdict form.

11:37AM 2                So we can actually hand out the verdict form now

11:38AM 3    since I'm ready to do instruction 20.

11:38AM 4                Instruction number 20.  When you get to the jury

11:38AM 5    room, choose one of your members to act as a foreperson.  The

11:38AM 6    foreperson will direct deliberations and will speak for you in

11:38AM 7    court.  A verdict form has been prepared for your convenience.

11:38AM 8    You have the verdict form now in front of you, and I'll go

11:38AM 9    through that in just a moment.  Take the verdict form with you

11:38AM 10   to the jury room.  When you've all agreed on the verdict, your

11:38AM 11   foreperson must fill in the form, sign it, date it, and carry

11:38AM 12   it.  Then you'll return it to the courtroom.

11:38AM 13               If you wish to communicate with me at any time,

11:38AM 14   please write down your message or question and give it to the

11:38AM 15   marshal.  The marshal will bring it to me, and I'll respond as

11:39AM 16   promptly as possible, either in writing or by talking to you in

11:39AM 17   the courtroom, but I caution you not to tell me how many jurors

11:39AM 18   have voted one way or the other at that time.

11:39AM 19               All right.  Now you have the verdict form in

11:39AM 20   front of you.  It has the name of the case, and it says

11:39AM 21   "Verdict":  1, Count 1 of the Indictment.  As to the offense of

11:39AM 22   conspiracy to advertise visual depictions of minors engaged in

11:39AM 23   sexually explicit conduct in violation of 18 -- it says USC,

11:39AM 24   that stands for United States Code, and those are symbols for

11:39AM 25   sections, so it's 18 United States Code, Sections 2251(d) and

| | | |
|---|---|---|
| 11:39AM | 1 | (e), we, the jury, find the Defendant, Plamen Georgiev |
| 11:39AM | 2 | Velinov -- and there's a place for you to indicate either |
| 11:39AM | 3 | guilty or not guilty. |
| 11:40AM | 4 | Count 2 of the Indictment.  As to the offense of |
| 11:40AM | 5 | conspiracy to distribute visual depictions of minors engaged in |
| 11:40AM | 6 | sexually explicit conduct in violation of 18 United States |
| 11:40AM | 7 | Code, Sections 2252(a)(2) and (b)(1), we, the jury, find the |
| 11:40AM | 8 | Defendant, Plamen Georgiev Velinov -- there's a place for you |
| 11:40AM | 9 | to indicate either guilty or not guilty. |
| 11:40AM | 10 | So say we all.  This is the 23rd day of January, |
| 11:40AM | 11 | 2023, and there's a place for the foreperson to sign. |
| 11:40AM | 12 | Hold on one second, please. |
| 11:40AM | 13 | (Pause.) |
| 11:41AM | 14 | THE COURT:  I'm going to excuse two jurors.  So we |
| 11:41AM | 15 | have -- as you can see, there are 14 people here.  In federal |
| 11:41AM | 16 | court, we seat 12 people on the jury, okay?  I have seated 14 |
| 11:41AM | 17 | people.  As you know, we still have people who get COVID, |
| 11:41AM | 18 | people who get sick, so I've had to seat two additional people. |
| 11:41AM | 19 | I'm going to ask you a couple of things.  First of all, the two |
| 11:41AM | 20 | people that I'm getting ready to excuse, I have had multiple |
| 11:41AM | 21 | times jurors get sick during deliberations.  I have had |
| 11:41AM | 22 | multiple times family members get sick and family emergencies |
| 11:41AM | 23 | come up where I've had to bring the alternate back.  It's |
| 11:41AM | 24 | happened to me many times.  So I'm getting ready to excuse you. |
| 11:41AM | 25 | I'm getting ready to read the numbers of the two alternate |

| | |
|---|---|
| 11:41AM | 1 |
| 11:42AM | 2 |
| 11:42AM | 3 |
| 11:42AM | 4 |
| 11:42AM | 5 |
| 11:42AM | 6 |
| 11:42AM | 7 |
| 11:42AM | 8 |
| 11:42AM | 9 |
| 11:42AM | 10 |
| 11:42AM | 11 |
| 11:42AM | 12 |
| 11:42AM | 13 |
| 11:42AM | 14 |
| 11:42AM | 15 |
| 11:43AM | 16 |
| 11:43AM | 17 |
| 11:43AM | 18 |
| 11:43AM | 19 |
| 11:43AM | 20 |
| 11:43AM | 21 |
| 11:43AM | 22 |
| 11:43AM | 23 |
| 11:43AM | 24 |
| 11:43AM | 25 |

jurors.  Please, please don't discuss the case.  Please don't look up anything on the internet.  You will receive word from us when a verdict is reached, or you'll receive word from us when we need for you to come back.  As I said, it has happened to me.  So please take that seriously.

We do, nevertheless, have lunch for all of you. We can do this a couple of ways.  You can take your lunch and leave, or if you need to sit here and eat, I prefer that you eat someplace away from the other jurors in case they're inclined to begin their deliberations.

Also members of the jury, now I'm going to ask you to please lock up your phones on the third floor just so that you are not -- so that you don't accidentally use your phone to look up evidence or to look up something or to check something.  I just don't want a mistake to be made.  That's what happened, as I said, last time when a juror did it.  I'm going to assume it was done accidentally, it wasn't done on purpose.  So I just don't want anybody to accidentally do that again.

If you're concerned about your children being able to reach you or a parent or a family member, a business colleague, let me know, and I will deal with that individually. But for now, while jury deliberations are going on, please keep your phone, you know, on the third floor.  If you need to keep it with you, let me know, and I'm just going to ask that you

11:43AM  1    keep it turned off and turn it on, you know, as you need to

11:43AM  2    check if you have any messages from your children, parents,

11:43AM  3    spouse, business colleague, whatever it happens to be, but you

11:43AM  4    can certainly check your messages periodically.  That's not a

11:43AM  5    problem.

11:43AM  6                 All right.  Before I excuse the jury and

11:43AM  7    announce who the two alternates are, is there anything else

11:43AM  8    from the Government here?

11:43AM  9             **MR. REYNOLDS:**  No Your Honor.

11:44AM  10            **THE COURT:**  Okay.  Is there anything else from the

11:44AM  11   defense, Mr. Kerr?

11:44AM  12            **MR. KERR:**  No, Your Honor.

11:44AM  13            **THE COURT:**  Okay.  Thank you.  So all of the exhibits

11:44AM  14   will go back, all of them.  If it's been received into

11:44AM  15   evidence, it will go back.  It's just going to take a few

11:44AM  16   moments to get it together, and there will be the opportunity

11:44AM  17   to view those on -- Aaron, we're going to have a screen back

11:44AM  18   there for them?

11:44AM  19            **COURT SECURITY OFFICER:**  Yes.

11:44AM  20            **THE COURT:**  So there will be a screen and equipment

11:44AM  21   for you to be able to view it.  Okay.

11:44AM  22                 Our two alternates are the two last individuals

11:44AM  23   seated, so the lady in seat 13 and the lady in seat 14, you are

11:44AM  24   free to either grab your lunch and go.  You're free to go

11:44AM  25   downstairs and eat in the jury assembly room, but, again, I

11:44AM  1   don't want anybody to accidentally discuss something.  I know
11:44AM  2   people don't do these things on purpose; just accidentally
11:44AM  3   sometimes they do.  So that's why I'm going to excuse you.
11:44AM  4   Number 13 and 14, you can grab your lunch and either eat
11:45AM  5   downstairs or leave with your lunch.
11:45AM  6                The rest of you, you are our 12 jurors, all
11:45AM  7   right?  So just give us a few moments to gather everything
11:45AM  8   together to get back to you.  You're free to begin your
11:45AM  9   deliberations as long as the two alternates are not there.
11:45AM 10   Okay?  Okay.  Anything?  Okay.
11:45AM 11                And just remember to do that with your phones,
11:45AM 12   please.  Just either bring them -- you know, downstairs is
11:45AM 13   really my preference, is that you bring it downstairs and lock
11:45AM 14   it up, but if you're worried about a family member being able
11:45AM 15   to contact you, let me know or let the court security officer
11:45AM 16   know, and I will permit you then to have your phone.  It just
11:45AM 17   needs to be turned off, and you can check it periodically,
11:45AM 18   every half an hour or whatever time period you feel so that
11:45AM 19   your family can contact you, okay?
11:45AM 20                All right.  If there's nothing else, I will now
11:45AM 21   excuse you to begin your deliberations.
        22                (Jury out at 11:45 a.m.)
11:46AM 23                **THE COURT:**  All right.  Thank you.  Anything else?
11:46AM 24   What I want you to do now is to please come up -- I know you
11:46AM 25   did this a little bit on Friday, right, Magaly?

11:46AM 1          COURTROOM DEPUTY:  Yes, Your Honor.

11:46AM 2          THE COURT:  On Friday, to go through the exhibits.

11:46AM 3  Let's just double-check that everything is what it needs to be

11:46AM 4  and that the right things go back there.

11:46AM 5          And, Aaron, just so there's no misunderstanding

11:46AM 6  with them, anybody says they need to keep their phone, please

11:47AM 7  let me know so that -- and I will -- you know, I know for

11:47AM 8  parents, it's really scary to be away from your children if you

11:47AM 9  don't have your phone or if you're taking care of a sick or

11:47AM 10 elderly person or even for business calls.  So I'm going to let

11:47AM 11 them, but it's got to be turned off, unless either of you wants

11:47AM 12 to be heard, and I will just verify that nobody has used it

11:47AM 13 when they come back and, you know, I can poll each and every

11:47AM 14 one of them, but that's about the best I can do.  I think in

11:47AM 15 these modern times, people are just used to having their

11:47AM 16 phones, and to take that away from them is really a burden, if

11:47AM 17 you ask me.

11:47AM 18          So anything else?

11:47AM 19          MR. REYNOLDS:  Not from the Government, Your Honor.

11:47AM 20          THE COURT:  Okay.  All right.  So just double-check

11:47AM 21 that everything goes back there.  Do we have your cellphone

11:47AM 22 numbers?

11:47AM 23          COURTROOM DEPUTY:  No.

11:47AM 24          THE COURT:  Okay.  You need to give your -- unless

11:47AM 25 you're going to be sitting right here in the courtroom the

| | | |
|---|---|---|
| 11:47AM | 1 | whole time, we need your cellphone numbers because if a |
| 11:48AM | 2 | question comes up, I'm going to call you, and I'm going to do |
| 11:48AM | 3 | it here in the courtroom, and we don't want to wait half an |
| 11:48AM | 4 | hour for to you show up.  So you either need to sit here the |
| 11:48AM | 5 | whole time, or you need to give us your cellphone number so we |
| 11:48AM | 6 | can reach you. |
| 11:48AM | 7 | All right.  We're in recess.  I'm just going to |
| 11:48AM | 8 | stay here for a few minutes.  Thank you. |
| | 9 | (Recess from 11:48 a.m. to 1:44 p.m.) |
| 1:44PM | 10 | THE COURT:  Thank you.  I understand we have a |
| 1:44PM | 11 | verdict; is that correct? |
| 1:44PM | 12 | COURT SECURITY OFFICER:  Yes, ma'am. |
| 1:44PM | 13 | THE COURT:  All right.  So we have a verdict.  I'm |
| 1:44PM | 14 | going to bring the jurors in, and I will ask that they provide |
| 1:45PM | 15 | the verdict.  And, Magaly, are you ready to read that? |
| 1:45PM | 16 | COURTROOM DEPUTY:  Yes, Your Honor. |
| 1:45PM | 17 | THE COURT:  Everybody should stay seated.  After |
| 1:45PM | 18 | they -- after the verdict is read, I'll poll the jurors, and |
| 1:45PM | 19 | I'll ask them one by one if that is their verdict, and then |
| 1:45PM | 20 | I'll go out and thank them and see if they have any questions |
| 1:45PM | 21 | for me.  Obviously most of the questions I can't answer that |
| 1:45PM | 22 | sometimes they ask, but I can at least generally speaking |
| 1:45PM | 23 | answer their questions.  I just ask that everybody please stay |
| 1:45PM | 24 | quietly in the courtroom, and then I'll be back into the |
| 1:45PM | 25 | courtroom. |

|       |    |                                                                     |
|-------|----|---------------------------------------------------------------------|
| 1:45PM | 1 | Okay.  So we'll bring the jury in. |
|       | 2 | (Jury in at 1:46 p.m.) |
| 1:46PM | 3 | THE COURT:  All right.  Thank you, ladies and |
| 1:46PM | 4 | gentlemen.  I understand you've reached a verdict; is that |
| 1:46PM | 5 | correct? |
| 1:47PM | 6 | THE FOREPERSON:  (Nodding head affirmatively.) |
| 1:47PM | 7 | THE COURT:  Could the jury foreperson please hand the |
| 1:47PM | 8 | verdict to the court security officer?  Thank you.  Thank you. |
| 1:47PM | 9 | And I just ask the courtroom deputy to please read the verdict, |
| 1:47PM | 10 | and everybody should stay seated. |
| 1:47PM | 11 | COURTROOM DEPUTY:  Yes, Your Honor.  United States of |
| 1:47PM | 12 | America versus Plamen Georgiev Velinov, case number |
| 1:47PM | 13 | 8:21-CR-342-VMC-SPF. |
| 1:47PM | 14 | Verdict.  Number 1, Count 1 of the Indictment, |
| 1:47PM | 15 | as to the offense of conspiracy to advertise visual depictions |
| 1:47PM | 16 | of minors engaged in sexually explicit conduct in violation of |
| 1:47PM | 17 | 18 USC Section 2251(d) and (e), we, the jury, find the |
| 1:47PM | 18 | Defendant, Plamen Georgiev Velinov, guilty. |
| 1:47PM | 19 | Number 2, Count 2 of the Indictment as to the |
| 1:47PM | 20 | offense of conspiracy to distribute visual depictions of minors |
| 1:48PM | 21 | engaged in sexually explicit conduct in violation of 18 USC |
| 1:48PM | 22 | Section 2252(a)(2) and (b)(1), we, the jury, find the |
| 1:48PM | 23 | Defendant, Plamen Georgiev Velinov, guilty. |
| 1:48PM | 24 | So say we all this 23rd day of January, 2023, |
| 1:48PM | 25 | signed by the foreperson. |

1:48 PM 1          THE COURT:  Okay.  Thank you very much.  I'm now

1:48 PM 2     going to poll the jury, which is what I do in all cases, and

1:48 PM 3     I'll just ask each person if this is their verdict.  The juror

1:48 PM 4     in seat number 1, is that your verdict?

1:48 PM 5          JUROR NO. 1:  Yes, Your Honor.

1:48 PM 6          THE COURT:  The juror in seat number 2, is that your

1:48 PM 7     verdict?

1:48 PM 8          JUROR NO. 2:  Yes, Your Honor.

1:48 PM 9          THE COURT:  The juror in seat number 3, is that your

1:48 PM 10    verdict?

1:48 PM 11         JUROR NO. 3:  Yes.

1:48 PM 12         THE COURT:  The juror in seat number 4, is that your

1:48 PM 13    verdict?

1:48 PM 14         JUROR NO. 4:  Yes, Your Honor.

1:48 PM 15         THE COURT:  The juror in seat number 5, is that your

1:48 PM 16    verdict?

1:48 PM 17         JUROR NO. 5:  Yes, Your Honor.

1:48 PM 18         THE COURT:  Thank you.  The juror in seat number 6,

1:48 PM 19    is that your verdict?

1:48 PM 20         JUROR NO. 6:  Yes, Your Honor.

1:48 PM 21         THE COURT:  Thank you.  The juror in seat number 7,

1:48 PM 22    is that your verdict?

1:48 PM 23         JUROR NO. 7:  Yes, Your Honor.

1:48 PM 24         THE COURT:  The juror in seat number 8, is that your

1:48 PM 25    verdict?

| | | |
|---|---|---|
| 1:48 PM | 1 | **JUROR NO. 8:**  Yes, Your Honor. |
| 1:48 PM | 2 | **THE COURT:**  Thank you.  The juror in seat number 9, |
| 1:48 PM | 3 | is that your verdict? |
| 1:48 PM | 4 | **JUROR NO. 9:**  Yes, Your Honor. |
| 1:48 PM | 5 | **THE COURT:**  Thank you.  The juror in seat number 10, |
| 1:48 PM | 6 | is that your verdict? |
| 1:49 PM | 7 | **JUROR NO. 10:**  Yes, Your Honor. |
| 1:49 PM | 8 | **THE COURT:**  Thank you.  The juror in seat number 11, |
| 1:49 PM | 9 | is that your verdict? |
| 1:49 PM | 10 | **JUROR NO. 11:**  Yes, Your Honor. |
| 1:49 PM | 11 | **THE COURT:**  Thank you.  The juror in seat number 12, |
| 1:49 PM | 12 | is that your verdict? |
| 1:49 PM | 13 | **JUROR NO. 12:**  Yes, Your Honor. |
| 1:49 PM | 14 | **THE COURT:**  I'll excuse the jury.  I'm going to go |
| 1:49 PM | 15 | out and see if I can answer any general questions that you |
| 1:49 PM | 16 | might have and to thank you for your service.  I'll come back |
| 1:49 PM | 17 | into the courtroom, and I ask that everybody else please stay |
| 1:49 PM | 18 | in the courtroom. |
| | 19 | (Jury out at 1:49 p.m.) |
| | 20 | (Recess from 1:49 p.m. to 2:06 p.m.) |
| 2:06 PM | 21 | **THE COURT:**  Okay.  So let's see.  Do we have a date |
| 2:06 PM | 22 | for the sentencing? |
| 2:06 PM | 23 | **COURTROOM DEPUTY:**  I can get that right now, Your |
| 2:07 PM | 24 | Honor. |
| 2:07 PM | 25 | **THE COURT:**  Okay.  Why don't you -- it'll be |

| | | |
|---|---|---|
| 2:07PM | 1 | somewhere between 75 and 90 days from today. |
| 2:07PM | 2 | **COURTROOM DEPUTY:** Okay. |
| 2:07PM | 3 | **THE COURT:** And, you know, I didn't -- as I went back |
| 2:07PM | 4 | there, I started thinking what about the -- I think there was |
| 2:07PM | 5 | the equipment, it sounded like the forfeiture of the equipment? |
| 2:07PM | 6 | So it sounds like he's going to -- I forget what you said |
| 2:07PM | 7 | there, Mr. Kerr. What about the equipment? There's a general |
| 2:07PM | 8 | forfeiture clause with respect to proceeds, but no money has |
| 2:07PM | 9 | been seized, so it's just the equipment. |
| 2:07PM | 10 | **MR. KERR:** I spoke to Mr. -- Ms. Valdes about this |
| 2:07PM | 11 | earlier, and we waive the procedure on that. |
| 2:07PM | 12 | **THE COURT:** Okay. So will you be -- are you giving |
| 2:07PM | 13 | up your right to the equipment, or do you want me to decide |
| 2:07PM | 14 | whether it's forfeitable or not? |
| 2:08PM | 15 | **MR. KERR:** We're -- he's giving up his right to the |
| 2:08PM | 16 | equipment. |
| 2:08PM | 17 | **THE COURT:** Okay. Most of the time people will just |
| 2:08PM | 18 | do that. All right. So I've tentatively set the sentencing -- |
| 2:08PM | 19 | doesn't mean it will occur this day, just tentative -- |
| 2:08PM | 20 | April 18th, at 10:00 a.m. That's 85 days from today. So |
| 2:08PM | 21 | Magaly will do the order on that, but it can certainly be |
| 2:08PM | 22 | moved. Doesn't need to be then. It's just sort of a holding |
| 2:08PM | 23 | place. |
| 2:08PM | 24 | Remember under our local rules, you're not to |
| 2:08PM | 25 | talk to the jurors, even if it's just, "How could I have done |

2:08PM   1   this better?  Did you like my style?"  Those are fair questions

2:08PM   2   as we always try to do better, but in our court you're not

2:08PM   3   allowed to talk to the jury, and I've told them not to talk

2:09PM   4   with you and to not discuss their verdict.

2:09PM   5                    Okay.  Anything else?

2:09PM   6            MR. REYNOLDS:  Not from the Government, Your Honor.

2:09PM   7            THE COURT:  Okay.  Thank you.  Anything else,

2:09PM   8   Mr. Kerr?

2:09PM   9            MR. KERR:  Not from the defense.

2:09PM  10            THE COURT:  Okay.  Well, thank you, everybody, for

2:09PM  11   your work on this, especially Mr. Kerr.  I know that this is --

2:09PM  12   CJA work not easy work, and I really appreciate -- I think you

2:09PM  13   really did go the extra mile for your client.

2:09PM  14                    So anyway, we are in recess.  Thank you.

2:09PM  15                        (End of proceedings.)

16

17

18

19

20

21

22

23

24

25

```
2:09PM   1            * * * * * * * * * * * * * * * * * * * *

2:09PM   2                 UNITED STATES DISTRICT COURT

2:09PM   3                 MIDDLE DISTRICT OF FLORIDA

2:09PM   4
2:09PM
2:09PM   5            REPORTER TRANSCRIPT CERTIFICATE
2:09PM
2:09PM   6        I, Tana J. Hess, Official Court Reporter for the United
2:09PM       States District Court, Middle District of Florida, certify,
2:09PM   7   pursuant to Section 753, Title 28, United States Code, that the
2:09PM       foregoing is a true and correct transcription of the
2:09PM   8   stenographic notes taken by the undersigned in the
2:09PM       above-entitled matter (Pages 1 through 99 inclusive) and that
2:09PM   9   the transcript page format is in conformance with the
2:09PM       regulations of the Judicial Conference of the United States of
2:09PM  10   America.
2:09PM
2:09PM  11
2:09PM
2:09PM  12
2:09PM
2:09PM  13   Tana J. Hess, CRR, RMR, FCRR
2:09PM       Official Court Reporter
2:09PM  14   United States District Court
2:09PM       Middle District of Florida
2:09PM  15   Tampa Division
2:09PM       Date:  August 20, 2023
2:09PM  16

        17

        18

        19

        20

        21

        22

        23

        24

        25
```

